Rita C. WILSON, et al., Appellants,

v.

The GOODYEAR TIRE & RUBBER COMPANY, et al., Appellees.

No. 9578.

Court of Appeals of Texas, Texarkana.

June 1, 1988.

Don Stokes, Stokes & Stokes, Marshall, for appellants.

Tracy Crawford, Tyler, for appellees.

William Cornelius, Tyler, for intervenors.

Before BLEIL, GRANT and CHADICK *, JJ.

CHADICK, Justice.

This is a wrongful death action arising out of an industrial accident at the Kelly–Springfield Tire Plant at Tyler, Texas, in 1985, in which Blanchard Vidmer Wilson, an employee of a subcontractor on a construction project at the plant, was fatally injured.

The action is prosecuted by and on behalf of the decedent's parents, widow and children to recover actual and exemplary damages from Goodyear Tire & Rubber Company, the Kelly–Springfield Tire Company, Houston Helicopters, and Thomas J. Frey, project manager for Goodyear. The trial court, at the close of evidence in the trial, dismissed the cause of action against Frey,

---

* Honorable T.C. Chadick, Justice, Supreme Court of Texas, Retired, sitting by assignment.

and the remaining defendants were absolved of liability by jury verdict on special issues. Judgment was entered on March 25, 1987, that plaintiffs take nothing. An appeal has been perfected.

In November 1979, OSHA inspectors cited Kelly–Springfield for violation of specific OSHA standards, alleging that every skylight on the plant's roof "was not guarded by a standard skylight screen or fixed standard railing on all exposed sides...." A second citation not relevant here was also issued. The controversy that arose reached the Occupational Safety and Health Review Commission, and was settled by an agreement[1] between Ray Marshall, Secretary of Labor, United States Department of Labor, and Kelly–Springfield Tire Company dated August 8, 1979.

The appellants' trial pleadings generally charged the appellees with numerous negligent acts and omissions, including per se negligence, in maintaining the involved skylight in violation of the Occupational Safety and Health Act of 1970 (OSHA), together with common law negligence in that respect.

■ The appellants' first point of error requires a review of the trial court's refusal to submit to the jury as negligence per se, an alleged violation of the agreement of August 8, 1980, pertaining to the guarding of skylights.

Focusing upon the first point, the parties have briefed questions on violation of an OSHA standard as constituting negligence per se, the decedent's OSHA coverage status as an employee of a subcontractor, the preclusive effect of the settlement agreement, and whether OSHA's provisions were adopted by Tex.Rev.Civ.Stat.Ann. art. 5182a (Vernon 1987), the Texas Occupational Safety Act. However, it is not necessary to reach all of these very difficult and wide-ranging questions, as the trial judge's action in refusing submission of the requested special issue[2] was not erroneous for reasons now to be noticed.

---

1. The Commission approved a settlement containing this pertinent language:

   In regards to Citation No. 1, Respondent shall install guards on those automatic heat-fire roof ventilators which are within 15 feet of equipment on the roof of Respondent's workplace around which work is conducted on a regular basis. Attached hereto as Exhibit "A" is a diagram of the roof of Respondent's workplace which shows the location of the twenty-five automatic heat-fire roof ventilators which are within 15 feet of equipment at which work is conducted on a regular basis and on which Respondent will install guards. The guard to be used by Respondent will be a grid consisting of ½ inch steel bars on one foot centers installed in the openings created by the automatice (sic) heat-fire ventilators except for the three automatice (sic) heat-fire ventilators specially designated by the asterisk (*) on Exhibit "A". On those three automatic heat-fire roof ventilators so designated by an asterisk (*), Respondent shall install guard rails which shall comply with current OSHA standards. The installation of the above described guards shall be completed within thirty days after the date on which this settlement agreement is approved and becomes final. It is further agreed that should additional equipment be installed or added to the roof of Respondent's workplace in the future and should such additional or newly installed equipment require work to be conducted on a regular basis within 15 ft. of an automatic heat-fire roof ventilator which is unguarded, Respondent agrees to install guards on such automatic heat-fire roof ventilatros (sic) within thirty days.

   ....

   ... Furthermore, the aforesaid payment shall not be construed as an admission of fault or liability as to any claim or proceeding which exists or may arise and be pursued by any person, agency or entity other than before the Occupational Safety and Health Review Commission or its judges.

   ... The citations and proposed penalties herein shall be a final order of the Review Commission, and nothing contained in this Agreement shall be construed in any way to limit the right of the Commission to utilize such final order, pursuant to the provisions of the Occupational Safety and Health Act of 1970.

2. The requested and refused issue was in this format:

   Do you find that on the occasion in question Kelly–Springfield violated the terms of the settlement agreement with the Occupational Safety and Health Review Commission pertaining to the guarding of skylights?

   Answer "yes" or "no"

   ANSWER: _____

   If you have answered the preceding question "yes," and only in that event, then answer the following question.

   ....

   Do you find that on the occasion in question such violation was a proximate cause of the occurrence in question?

The appellants' theory under this point necessarily is that violation of one or more of the terms of the settlement agreement constitutes negligence per se. Clearly, the appellants chose to treat the decedent as a third-party beneficiary of the contract and premised liability upon violation of its terms. The trial judge apparently determined that if the terms of the agreement established a contractual standard of care violation thereof was not negligence per se. For the purpose of review, it will be assumed the decedent was a third-party beneficiary and the issue presented will be discussed on that basis. Consistent with this assumption, the settlement established a contractual standard of duty between all the parties governed thereby. *Sinko v. City of San Antonio*, 702 S.W.2d 201, 208 (Tex.App.–San Antonio 1985, writ ref'd n.r. e.). And on the same authority it follows that when the contract forms the basis of a tort duty, violation of the duty should be tried under the rules of tort law.

■ A litigant in Texas alleging negligence per se as a ground of recovery assumes the burden of proving a statutory violation. *Carter v. William Sommerville and Son, Inc.*, 584 S.W.2d 274 (Tex.1979); *Moughon v. Wolf*, 576 S.W.2d 603 (Tex. 1978). In *Missouri Pacific Railway Co. v. American Statesman*, 552 S.W.2d 99 (Tex. 1977), it is said, "for negligence per se, there must (1) be a violation of a legislative enactment, (2) which is unexcused." Since the issue requested does not inquire about a violation of a statutory duty, submission was properly refused.

■ The second point of error cannot be sustained. The error asserted relates to statements made by counsel for appellees in the course of jury argument. The court reporter was not requested to and did not report the argument. Consequently, the statement of facts does not contain a report thereof. The absence of a report of the argument precludes a proper review of the alleged error. *See Thomas v. International Harvester Co.*, 325 S.W.2d 832, 833 (Tex.Civ.App.–San Antonio 1959, writ ref'd n.r.e.); *Allied Underwriters v. Spillman*, 145 S.W.2d 703, 707 (Tex.Civ.App.–Dallas 1940, writ ref'd).

The jury answered the first eight issues submitted, all pertaining to either negligence or proximate cause, but did not answer any damage issue. The trial judge called this jury lapse to the attention of counsel for the parties before accepting the verdict. The judge offered to have the jury answer the damage issues if counsel so requested. Counsel for all parties declined the offer.

■ While considering appellants' motion for new trial, the judge made the following remarks:

> THE COURT: It follows just like night and day, counsel. No doubt in my mind and yours either. The jury knew exactly what they did. Defendants win and the plaintiffs looses (sic). And they weren't going to answer the damage issues. Whether or not that is any error, reversible error, I will withhold judgment on that. No question they knew what they were going to do.
>
> . . . .
>
> ... I don't think there is any question that they knew what they had done and then answer accordingly.

The record contains no testimony or evidence from any source referable to the knowledge the jury had of the effect of its answers or tending to show the jury agreed to give or withhold its answers to achieve a given result. Nor is there contention that the charge as a whole violated the provisions of Tex.R.Civ.P. 277 that the charge not advise the jury of the effect of their answers. On the other hand, the charge affirmatively instructed the jury it was not to decide who should win the suit and then try to answer questions accordingly. No findings of fact or conclusions of law were requested or filed by the trial court. Failure in this respect raises a presumption that all controverted facts were found in support of the judgment. *See Brawley v. Bowen*, 387 S.W.2d 383, 384 (Tex.1965); *Putman v. Lazarus*, 156 Tex. 154, 293 S.W.2d 493, 495 (1956).

Answer "yes" or "no"

Answer: _____

Appellants urge Point of Error 3 in this language:

> The trial court erred in refusing to grant a new trial after the trial court found that the jury determined the effect of its answers and answered the special issues accordingly.

It is obvious that if the jury knew the effect of its answers, it knew that the plaintiffs in the action could not recover on the partial verdict it rendered. Regardless of what the jury knew or believed about the effect of its answers, the indispensible elements of the misconduct charged are an agreement by the jurors to decide which party should prevail and then frame their answer to the questions submitted in a manner that assured that outcome. *Simmonds v. St. Louis B. & M. Ry. Co.*, 29 S.W.2d 989, 990 (Tex.Comm'n App. 1930, holding approved); 3 R. McDonald, *Texas Civil Practice in District and County Courts* § 14.12 (rev. 1983). Appellants insist and principally rely upon the jury argument complained of under Point of Error 2 as the source of information that allowed and persuaded the jury to determine the effect of its answers and omit answering the damage issues.

As previously stated, the argument complained of under Point of Error 2 was not reported and is not in the record. What was said in reviewing the second point applies here. Inferences from the circumstances shown by the record are as consistent with the jury not having agreed to give or withhold its answers to achieve a given result as with an agreement to do so. The remarks of the trial judge heretofore quoted are mere speculation about the mental processes of the jury and show he reserved disposition of the question for a later date. The mental process of the jury is a matter the court could not consider in reaching a decision. *Putman v. Lazarus*, supra; Tex. R.Evid. 606. In the absence of admissible evidence proving or tending to prove the asserted jury misconduct, the trial judge's action in overruling the appellants' motion for new trial, despite his speculations voiced from the bench, constituted an implied finding that the record did not show an agreement by the jurors that the appel-lees' should prevail and to answer the questions in a manner that would assure such outcome. There being no evidence to impeach the judge's implied finding, denial of a new trial on this basis was not erroneous. The point is overruled.

The decedent Wilson was the employee of Abbott Associates, a subcontractor under Goodyear. Houston Helicopters was brought on the project as a subcontractor of Abbott. At times pertinent here, the helicopter was engaged in clearing existing heat/fire ventilator units from the plant roof by lifting them off.

On May 19, 1985, the decedent and others were on the roof and fixed tie lines from the helicopter to a unit preparatory to lift. As this, the twelfth lift of the day began, the suspended unit shifted toward decedent and he hurriedly backed away, tripped and fell through a skylight to the plant floor almost thirty feet below.

■ Appellants' Points of Error 4 and 5 test the validity of the trial judge's action in sustaining appellant Frey's motion at the close of evidence to dismiss the cause of action against him.

While appellants do not specify the whole breadth of their theory of Frey's liability, they cite *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985), and appear to rely on its holding that "when the general contractor exercises some control of a subcontractor's work he may be liable unless he exercises reasonable care in supervising the subcontractor's activity." And, they expand their contention by argument that Frey "exercised some control over the subcontractors' work and failed to exercise reasonable care in so doing. He thus had a duty to see that the work was carried out with safety, i.e. most obviously that the skylight was barricaded or guarded." Frey's spectrum of duties in this respect as an individual and as project manager are treated in 3 Tex.Jur.3d *Agency* § 164, et seq. (1980); Restatement (Second) of Agency §§ 355, 356 (1958); Restatement (Second) of Torts § 387 (1965).

The appellants' theory of Frey's liability makes it necessary to analyze the proof in

the record to determine Frey's individual conduct and what, if any, control Frey exercised individually or as manager over Goodyear's subcontractor, Abbott Associates, and/or Abbott's subcontractor, Houston Helicopters.

Frey was North American manager of all tire plant construction projects for Goodyear. He was stationed in Akron, Ohio, and planned and helped secure management approval for the Kelly–Springfield project and was the manager of the job. His duties included coordination of the job from original concept through the estimation, procurement, construction, machinery installation and start-up. He was at the job site for a couple of days monthly in the early days of the project to check on progress, to talk to those on the ground, to plan with and to get input from them. In February 1985, when installation of equipment was at its peak, because of his experience, he was at the plant "a lot" and continued to be from that time until completion. By his own testimony, he participated in every phase of the project from beginning to the time of trial.

He also testified that he was present and observed the helicopter lift units from the roof of the plant building the morning of decedent's death. Early that morning, the helicopter was preparing to make a lift, but turned away and landed nearby. With reference to the incident, the record shows this testimony by Frey:

Q. Did you tell anybody to do anything with regard to the helicopter lift or how it was to be accomplished?

A. Only insofar as to make sure that we had all the Kelly–Springfield people out of the plant prior to the lift.

Q. Other than that, did you give any directions or instructions to anyone with regard to the lift?

A. No, sir.

Another witness testified that about seven o'clock that morning, while the helicopter was hovering over the roof, Mr. Still, a Goodyear engineer and supervisor, spoke into his walkie-talkie saying there were still people in the building. The witness said the walkie-talkie relayed this information to Houston Helicopter people, and the helicopter moved off and landed until workmen were cleared from inside the building.

Although there is evidence in the record tending to show that Goodyear exercised some control over other subcontractors, the foregoing constitutes the proof that appellants must rely upon for the purpose of showing Frey's conduct and of showing that Goodyear or Frey, as agent or individually, exercised control over either or both Abbott Associates and Houston Helicopters.

This evidence does not show or tend to show that Frey exercised any control over the subcontractors. There is no evidence that Frey spoke to representatives of either of them with reference to calling off the lift. But, it may be inferred that he authorized or ordered Still to advise the subcontractors that workmen were still in the building. All that was communicated by Still to the subcontractors was that there were still people in the building. The communication was an advisory warning, but not an order, instruction, or an interference that amounted to control of the subcontractor's action. Consideration of all the evidence compels the conclusion that Frey's conduct as an individual was not negligent and that no control over subcontractors was exercised by Frey, individually or as manager. There being no controverted evidence for jury determination, the trial judge properly withdrew the case against Frey from the jury. 3 R. McDonald, *Texas Civil Practice in District and County Courts* § 11.25 (rev. 1983). Though not precisely in point, *J. Weingarten, Inc. v. Moore*, 449 S.W.2d 452 (Tex.1970), and *S.H. Kress & Co. v. Selph*, 250 S.W.2d 883 (Tex. Civ.App.–Beaumont 1952, writ ref'd n.r.e.), concern liability of managerial employees in their individual capacity and support this conclusion. Points of Error 4 and 5 are overruled.

■ Appellants group Points of Error 6, 7, 8 and 9 for briefing purposes. Appellants' Point of Error 6 challenges the jury's negative answer to Special Issue 1, finding Goodyear was not negligent in failing to guard the skylight or in failing to ade-

quately warn the decedent of the danger of falling through the skylight, as being contrary to the great weight and preponderance of the evidence. Point of Error 7 levels the same challenge to the jury's negative answer to similar questions propounded by Special Issue 3.

Two-pronged Point of Error 8 challenges the jury's affirmative finding in answer to Special Issue 7, that the decedent failed to keep a proper lookout for his own safety on the ground of factual insufficiency and also as being contrary to the great weight and preponderance of the evidence. On the same grounds Point of Error 9 challenges the jury's affirmative answer to Special Issue 8, that decedent's failure to keep a proper lookout (as established by Special Issue 7) was the proximate cause of decedent's fatal injuries.

The core contention under Points 6, 7, 8 and 9 targets inadequacy of the warning the decedent received on the danger of falling through the skylight as the particular wherein the jury's findings in question are factually insufficient or so contrary to the great weight and preponderance of the evidence as to be unjust. Their brief sums up appellants' view of the evidence and couches complaint in this language:

> While the skylights were obviously in plain view, had been pointed out and even warned about by decedent's foreman and co-workers, the distinction must be drawn between warning of an obstacle, and warning of a deadly hazard. Admittedly, the roof workers knew generally to avoid the skylights in the context that they presented an obstacle, something to break and perhaps pay for, and even a hazard in terms of tripping and falling down. However, these workers, by and large, did not appreciate that by falling on or into a skylight, if it happened to be one that was unguarded, they would fall to the floor below and likely be killed. This was true even of ... the Abbott foreman who was in charge of decedent's crew, and who himself was an experienced sheet metal roof worker. He freely admitted in trial that this was important information, that he did not appreciate the true danger, and

that had he known it and appreciated it, he would have passed it along to his crew in specific terms.

■■■■ The factually insufficient points and the great weight points must be reviewed in this Court by consideration of all evidence the record contains relevant thereto. The factual evidence is insufficient when the evidence tending to prove the fact in question is too weak, standing alone, to support the jury finding. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960). A great weight and preponderance point should be sustained when the evidentiary record contains some evidence to support the fact found by answer to the question, but the great preponderance of the evidence supports its nonexistence. *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Traylor v. Goulding*, 497 S.W.2d 944 (Tex.1973); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, supra.

■■■■ Kelly–Springfield owed a duty to the employees of Goodyear, as well as to the employees of Goodyear's subcontractors, to maintain plant premises in a reasonably safe condition or to warn of any dangerous condition it knew or should have known about and which was not reasonably apparent to such employees. *Shell Chemical Company v. Lamb*, 493 S.W.2d 742 (Tex.1973); *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443 (Tex.App.–Amarillo 1985, writ ref'd n.r.e.); *Zippy Properties, Inc. v. Boyd*, 667 S.W.2d 312 (Tex.App.–Waco 1984, writ ref'd n.r.e.); *Sun Oil Co. v. Massey*, 594 S.W.2d 125 (Tex.Civ.App.–Houston [1st Dist.] 1979, writ ref'd n.r.e.). It is undisputed that the decedent was an employee of Abbott, a subcontractor on the job, and that the alleged dangerous condition, an unguarded skylight, existed on the premises at the time of the decedent's entry thereon.

■■■■ In broad terms, the sufficiency of a warning depends upon such factors as the intelligence and experience of the invi-

tee and the nature of the danger. *Kalopodes v. Federal Reserve Bank of Richmond,* 367 F.2d 47 (4th Cir.1966); 53 Tex. Jur.3d *Negligence* § 40 (1987). From these same authorities, it appears that when evidence is not conclusive on the issue, sufficiency of the warning is for jury determination. The quotation last made from appellees' brief acknowledges, and pictures in evidence show, the skylight was in plain view of the decedent, and the decedent's foreman and coworkers had warned of its danger. Appellees, of course, emphasize testimony that the accident was caused by decedent backing away from his work position in a manner contrary to the most basic safety precautions sheetmetal workers or any cautious tradesman would take when working on an industrial roof.

The opinion will not be extended by more details of the evidence. Whether the evidence is considered from appellants' narrow focus or by reference to the entire evidentiary record and application of rules appropriate thereto, it appears factually sufficient to support the jury's findings in question, and such jury answers are not contrary to the great weight and preponderance of the evidence. Necessarily, Points of Error 6, 7, 8 and 9 are overruled.

Appellees, by a "Prologue" to their brief and in reply to appellants' Points of Error 8 and 9, suggest appellants, in effect, waived their cause of action by agreeing to accept a partial verdict as mentioned in the discussion of appellants' third point of error. In view of the disposition that must be made of the appeal, the opinion will not be lengthened to discuss the contention.

On appellants' motion for rehearing, the original opinion has been re-examined and brief additional discussion of appellants' points of error one and three added. Having found no error requiring reversal, all of appellants' points of error, as well as the motion for rehearing, are overruled and the judgment of the trial court is affirmed.