**GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, Appellant,**

v.

**Richard LIGHTFOOT, Appellee.**

**No. 08–87–00085–CV.**

Court of Appeals of Texas, El Paso.

Oct. 28, 1987.

W. Bernard Whitney, W. Bernard Whitney, P.C., Fort Worth, for appellant.

Ruff Ahders, Ruff Ahders, Associated, Odessa, Michol O'Connor, Houston, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

Richard Lightfoot sued his medical insurance company alleging breach of contract, violations . of the Texas Deceptive Trade Practices Act and violations of the Texas Insurance Code. The insurance company filed motions for summary judgment as to all of the allegations of Richard Lightfoot. The trial court granted summary judgment as to the claims under the Deceptive Trade Practices Act and violations under the Texas Insurance Code, but denied the summary judgment as to breach of contract allegations. The case proceeded to trial under the breach of contract contentions and a jury verdict was in favor of the policyholder, resulting in a judgment against Appellant in the amount of $30,732.07, plus interest and attorney's fees. The insurance company appeals from the adverse verdict of the jury, and Appellee Richard Lightfoot appeals from the granting of summary judgment to Appellant as to his cause of action under the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. sec. 17.46(b)(5) (Vernon Supp.1987), and Article 21.21, Tex.Ins.Code Ann. (Vernon 1981). We reverse the trial court's granting of the summary judgment under the Texas Deceptive Trade Practices Act and Article 21.21 of the Texas Insurance Code and, further, reverse the judgment for the Appellee under the breach of contract action and remand the case for trial.

■ Appellant's Point of Error No. One asserts that the trial court erred in denying Appellant's motion for summary judgment as Appellee's cause of action was based on breach of contract.

The denial by the trial court of Appellant's motion for summary judgment is not reviewable because there was a trial on the merits and a judgment entered on the breach of contract action. *Ackermann v. Vordenbaum*, 403 S.W.2d 362 (Tex.1966); *Motor 9, Inc. v. World Tire Corporation*, 651 S.W.2d 296 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.).

Point of Error No. One is overruled.

Appellant insurance company has brought forward twenty-three points of error, citing only nine cases to support its position. There were only three witnesses that testified in the trial court, and the evidence consists of a mere one hundred pages. Appellee policyholder, Richard Lightfoot, was the only witness who testified as to the facts surrounding the purchase and issuance of the insurance policy in question. Appellee's dealing with the insurance company was only through the soliciting agent who did not appear as a witness and through an officer of the corporation who also did not appear as a witness. Only one issue was submitted to the jury concerning the facts pertaining to the insurance policy. It is suggested by the briefs of both the Appellant and the Appellee that the question involved in this case is whether or not Appellant waived that provision in the insurance policy that provided that preexisting conditions were not covered under the policy until it had been in force for a period of two years. Appellant's points of error generally attack the legal sufficiency of the evidence and also complain of the factual insufficiency of the evidence to warrant submission of the case to the jury and therefore support a judgment.

In determining a "No Evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. In regard to the factual insufficiency points, we are required to

consider and weigh all of the evidence in this case in determining whether the evidence is insufficient or if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). The facts are somewhat unusual because of the undisputed evidence that the policyholder attempted to, and in effect, probably did, cancel the policy issued to him when he demanded a refund of his money within the ten-day period provided in the policy allowing cancellation. In April, 1984, an agent of the Appellant company contacted Richard Lightfoot about a health insurance policy. Appellee testified that he told the agent of his 1976 heart attack and a flare-up that occurred in 1981. Appellee was told that the insurance company would check his medical history. The agent failed to list the 1977 heart attack and the medical problems of 1981 on the application, but he did obtain a check from the Appellee for $1,446.00, representing the first year's premium. When Appellee received his insurance policy and noted that it had a clause that prevented insurance coverage for a preexisting condition for a period of two years, he wrote the Appellant a letter as follows:

May 14, 1984

General Life and Accident Ins. Co.

Home Office

Fort Worth, TX 76109

Dear Sir:

In looking over our policy, we feel we cannot accept it. I have had a heart attack, and it reads that it does not provide for any pre-existing conditions. We did not understand it to be this way. Please refund our money.

Sincerely,
/s/ Richard Lightfoot
Richard Lightfoot

The Appellant company apparently did not believe in answering letters and never answered this correspondence from its policyholder. Instead, Appellee testified that he received a telephone call from an individual who identified himself as "Williams" with the Appellant insurance company and advised Appellee of the company's knowledge of the letter requesting cancellation and refund of Appellee's premium. The following testimony was given by Appellee Lightfoot before the jury in regard to the telephone conversation with the individual named Williams:

Q. What did you tell this man?

A. I told him if the insurance didn't cover my heart problem, then I didn't need it.

Q. All right, and what did he do to cause you to continue to keep this policy and continue to pay the premiums?

A. He told me it was a good policy. And I asked him again if it would cover my heart, and he never did, the best I can remember, give me a direct answer.

Q. All right. After—regardless of what he said—and I'm not really getting into the specific words. I know it has been a long time ago—but after you hung up the phone with the president or vice president or secretary of the company, were you satified [sic] that this policy covered your heart?

Q. Yes, sir.

The claims manager for Appellant company testified that the president of the company was J.L. Williams and his wife was secretary.

Nothing further was heard from the Appellant, so on April 30, 1985, Appellee paid another year's premium. In June, 1985, Appellee suffered a heart attack and in August, 1985, open-heart surgery was performed in Odessa, Texas. He gave the hospital his policy number and the hospital forwarded his claim to the Appellant company. This occurred in August, 1985, and yet no word was heard from the insurance company until October 21, 1985, when Appellee received a letter from Appellant company for the first time denying his medical

claim. Enclosed with the letter of rejection was a rider or a policy endorsement which requested Appellee's signature and provided that coverage would exclude anything "due to disease or disorder of the heart or circulatory system." This endorsement or rider was back-dated to May 5, 1984, some fifteen months before Appellee's heart surgery. Appellee refused to sign the rider, and on November 12, 1985, he received another letter asking him to sign the rider. The claims manager for the Appellant company testified that the rider or endorsement should have been attached to Appellee's policy when it was issued and it would have precluded coverage for the preexisting heart condition, unless changed by the Appellant company.

█ The Appellant company has treated the trial of the case, and its points on appeal, as involving waiver and not estoppel. Our Supreme Court has mandated that we must liberally construe the points of error in a case in order to obtain a just, fair and equitable adjudication of the rights of the litigants. We must look not only at the wording of the points of error, but to the arguments under each point, the evidence and the pleadings to determine as best we can the intent of the parties. *Holley v. Watts,* 629 S.W.2d 694 (Tex.1982), *Pool v. Ford Motor Company,* 715 S.W.2d 629 (Tex.1986).

There is a distinction between waiver and estoppel, but our Texas courts have at various times used the terms synonymously. Ordinarily, waiver presupposes full knowledge of an existing right, while estoppel arises whereby fault of one or another has been induced to change his position for the worse. *Wirtz v. Sovereign Camp W.O.W.,* 114 Tex. 471, 268 S.W. 438 (1925). In the case of *Equitable Life Assur. Society of The United States v. Ellis,* 105 Tex. 526, 147 S.W. 1152 (1912), the Supreme Court held that waiver was essentially unilateral in its character; it results as a legal consequence from act or conduct of the party against whom it operates; and no act of the party in whose favor it is made is

necessary to complete it. It need not be founded upon a new agreement or be supported by consideration, nor is it essential that it be based upon an estoppel. In *Southland Life Insurance Co. v. Lawson,* 137 Tex. 399, 153 S.W.2d 953 (1941), it was stated that in some instances the doctrine of waiver is merely another name for the doctrine of estoppel which can only be invoked where the conduct of the company has been such as to induce action in reliance upon it and where it would operate as a fraud upon the assured if they were afterwards allowed to disallow their conduct. As it can be readily seen, the terminology of waiver and estoppel has been used, abused and miscontrued in an effort to arrive at meaningful decisions. It has generally been the rule in Texas, and in most jurisdictions, that the doctrines of waiver and estoppel are not available to bring within the coverage of an insurance policy risks not covered by its terms or expressly excluded therefrom.

█ The testimony in this case was that the officer of the company had a right to make policy changes in the contract. The policy provision in regard to this is as follows: "No change in this policy shall be valid unless approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions." There is no question in this case involving the soliciting agent, but the question involved here is whether or not the president of the company in his telephone conversation with Richard Lightfoot led Mr. Lightfoot to believe by his words, acts or conduct that the two-year preexisting condition clause would not be operable. The issue submitted by the trial judge was as follows:

Do you find form [sic] a preponderance of the evidence that J.F. Williams, an officer of Defendant, induced Mr. Lightfoot not to cancel the policy of health insurance with the assurance that the contract would cover his pre-existing

heart condition, and thereby waived Defendant's pre-existing condition provision?

The court instructed the jury as follows:

You are instructed that provisions or conditions contained in a policy of insurance designed for the benefit or protection of the insurance company may be waived by the company or its authorized agents. You are instructed that J.F. Williams, as an officer of Defendant, was an authorized agent for Defendant.

The issue submitted by the trial court could be construed as an estoppel issue along with a waiver issue. Our trial judges have been encouraged and urged by the Supreme Court, and Rule 277, Tex.R. Civ.P., to submit controlling issues of a case in broad terms so as to simplify the jury's chore. *Island Recreational Development Corporation v. Republic of Texas Savings Association,* 710 S.W.2d 551 (Tex. 1986). This was done in this case.

We believe the evidence does raise estoppel and recovery under the Restatement (Second) of Contracts sec. 90 (1981), whereby a contractual obligation is imposed by law, not the will of both parties, when one party by word, act or combination knowingly induces another party to act or forebear to act under the induced mistaken belief. The evidence indicated by Appellee's letter of May 14, when he wrote the company and asked for his money back, that he intended the insurance contract be cancelled. He was entitled to his money back, and the telephone call from an officer of the company, if believed by the jury (which it was), constituted a new agreement whereby the company received a consideration (retention of the insurance premium) and therefore could be estopped from raising the exclusion defense. We find the evidence showed, regardless of waiver or estoppel, that Appellee could assert that a new contract was entered into on the date that the officer of the Appellant company called and convinced Appellee to leave his premium with the company. The insurance company failed to present any evidence other than the testimony of the claims manager for the Appellant company who had no personal knowledge of the facts.

Appellant's "No Evidence" points of error in regard to submission of the case to the jury on waiver or estoppel are overruled.

■ Points of Error Nos. Thirteen and Twenty-Three assert that the trial court erred in permitting Appellee to file a trial amendment after the case had been submitted to the jury. Appellee's trial amendment alleged both estoppel and waiver. Appellee should have amended his petition earlier, but we have difficulty believing that Appellant company was truly surprised when the testimony came out in regard to the officer of the company, Mr. Williams, talking by telephone to the Appellee concerning the waiver or estoppel as claimed by the Appellee. The record indicates that on Appellant's motion for summary judgment, Appellee's response raised such questions that would indicate the theory of waiver or estoppel, and this was a month before trial. We find that the trial court did not abuse its discretion or err in granting the trial amendment.

Points of Error Nos. Thirteen and Twenty-Three are overruled.

■ The sparse amount of evidence leaves some doubt as to whether the case was tried under the theory of estoppel, waiver or promissory estoppel. Therefore, we find there was insufficient evidence to support the jury verdict on the issue as submitted.

We sustain those points of error asserting insufficient evidence to support the jury verdict.

Appellant's Points of Error Nos. Fourteen, Seventeen and Eighteen relating to attorney's fees and improper jury argument are overruled.

We now must consider Appellee's cross-points which were not responded to initially by the Appellant company in its brief before this Court.

Appellee's Cross-Point No. One alleges that the trial court erred in granting the insurance company's motion for summary judgment on Appellee's Deceptive Trade Practices Act claims and violation of Article 21.21 of the Texas Insurance Code. Appellee's response to the motion and the supporting affidavit of Appellee clearly raises a fact issue on both the Deceptive Trade Practices Act and the Insurance Code, Article 21.21, sec. 4, by asserting the deceptive and misleading conduct of Williams when inducing Appellee to continue coverage under the mistaken belief that the exclusion would be waived. Consequently, the trial court did err in granting summary judgment in regard to the allegation of the Deceptive Trade Practices Act and the Insurance Code, Article 21.21, sec. 4. Appellant's contention in regard to the absence of any private cause of action under Tex.Ins.Code Ann. art. 21.21–2 (Vernon 1981), was correct. *Texas Farm Bureau Mutual Insurance Company v. Vail,* 695 S.W.2d 692 (Tex.App.—Dallas 1985, no writ.); *Russell v. Hartford Casualty Insurance Company,* 548 S.W.2d 737 (Tex. Civ.App.—Austin 1977, writ ref'd n.r.e.). Therefore, Appellee's Cross-Point No. One is overruled insofar as the cause of action alleged under the Unfair Claims Settlement Practices Act, Article 21.21–2 of the Texas Insurance Code, but Appellee's Cross-Point of Error No. One insofar as to the Deceptive Trade Practices Act and the Texas Insurance Code Article 21.21, sec. 4, causes of action are sustained.

In the interest of justice, we reverse the judgment of the trial court and remand the case for trial insofar as the breach of contract action, and also reverse the summary judgment granted by the trial court in regard to the Deceptive Trade Practices Act allegations and the Texas Insurance Code, Article 21.21, sec. 4, causes of action.