**GEM HOMES, INC., f/k/a Advantage Housing, Inc., Appellant,**

v.

**Osvaldo J. CONTRERAS, Indiv. and as n/f of Laura Ortiz Contreras, Juanita Contreras, Sandra Veronica Contreras, Martha Contreras and Osvaldo Contreras, Jr., Minors, Appellees.**

No. 08–92–00239–CV.

Court of Appeals of Texas, El Paso.

Aug. 25, 1993.

Rehearing Overruled Sept. 29, 1993.

Daniel L. Bates, Robert B. Wagstaff, Decker, Jones, McMackin, McClane, Hall & Bates, Fort Worth, for appellant.

Drew Mouton, Troyce G. Wolf, Bancroft, Mouton & Wolf, Big Spring, for appellees.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## *OPINION*

LARSEN, Justice.

This appeal from a wrongful death judgment raises a question of first impression: does the seller of a used mobile home who delivers it to its destination have a legal duty to anchor it, or ensure that one certified by the State of Texas does so? We believe the legislature intended to impose such a duty, and that in this case the seller's failure to anchor the home was negligence *per se.* We affirm in part the judgment of the trial court, and reverse and remand in part.

### *FACTS*

In March 1988, Coke and Dinette Barton purchased a used mobile home from Gem Homes, Inc., then known as Advantage Housing, Inc. They needed the mobile home to house their farm worker, Osvaldo Contreras, Sr., and his family. The sales contract provided that Gem Homes would deliver the mobile home to the Barton's farm in Glasscock County, Texas, in these terms: "delivery only, no set-ups, hook-ups." Accordingly, Gem Homes transported the home to the Barton farm, but did not anchor it on-site or perform any other installation task, nor did Gem Homes provide for anyone else to perform these functions.

The mobile home remained unanchored for over fifteen months. During this time Osvaldo Contreras, Sr., his wife Magdalena, and their five children lived in the home. Mr. Barton and Mr. Contreras hooked up utilities, and Barton paid someone to dig a septic tank, but no one ever affixed the home to the ground. Neither Coke Barton nor Osvaldo Contreras, Sr. had experience or training in anchoring a mobile home.

On June 6, 1989, a violent thunderstorm raged through Glasscock County and winds of over one hundred miles per hour swept the Barton's farm. The storm upended the unsecured mobile home with Magdalena Contreras and the five Contreras children inside. Magdalena Contreras was killed instantly; the children escaped unharmed except Sandra Contreras, whose leg was bruised.

Osvaldo Contreras, Sr. brought a wrongful death suit on his own behalf and as next friend to his children against Coke Barton and Gem Homes. The suit also sought damages for Sandra Contreras's leg injuries. Gem Homes counterclaimed against Osvaldo Contreras, Sr., Magdalena Contreras, and Coke Barton, claiming the negligence of each contributed to the death and injury. Barton settled with plaintiffs before trial.

The parties filed various motions for summary judgment, asking the trial court to interpret the law governing construction, sale, and installation of mobile homes. The trial court ruled that Gem Homes, as seller and deliverer of the used mobile home, had a statutory duty to anchor it on site and the failure to do so was negligence *per se.* The trial court also found that Gem Homes violated no common law duty. Conversely, the court found that neither Coke Barton nor Osvaldo Contreras, Sr. had a statutory duty to anchor the home, but they were both subject to liability for common law negligence.

After trial, the jury returned its verdict assessing the comparative fault of each person at:

| | |
|---|---|
| Gem Homes | 50% |
| Osvaldo Contreras, Sr. | 15% |
| Magdalena Contreras | 5% |
| Coke Barton | 30% |

The trial court entered judgment with credits and allowances based upon this verdict. The trial court awarded each of the children a net recovery; it entered judgment against Osvaldo Contreras, Sr. for contribution to Gem Homes based upon his settlement with Barton, coupled with his 15% of fault. The trial court reduced the awards to the children based upon the jury's assessment that Magdalena Contreras bore 5% fault for her own death.

Gem Homes appeals the judgment. In a cross-point, plaintiffs challenge the trial court's method of computing their damage awards.

### *SELLER'S DUTIES UNDER THE MANUFACTURED HOUSING STANDARDS ACT*

In its Points of Error One through Five, Gem Homes challenges the trial court's deci-

sion that it was liable for failing to anchor the mobile home under a theory of negligence *per se.*

◼ As a threshold matter, we note that Gem Homes' Point of Error Two asserts the trial court should have granted its motion for partial summary judgment. We may not review the court's denial of summary judgment where trial on the merits was later held, and a judgment entered on the same issues. *Ackermann v. Vordenbaum,* 403 S.W.2d 362, 365 (Tex.1966); *General Life and Accident Ins. Co. v. Lightfoot,* 737 S.W.2d 953, 955 (Tex.App.—El Paso 1987, writ denied). After a full trial on the issues of duty, liability, and causation, the jury returned its verdict, and the trial court entered judgment against Gem Homes. We may not now properly review Gem Homes' summary judgment motion on these same issues. Gem Homes' Point of Error Two is overruled.

◼ In Points of Error One, Three, Four, and Five Gem Homes challenges the trial court's finding that it was negligent *per se,* charging the jury accordingly, and refusing to instruct the jury that Barton and Contreras, as homeowners, were guilty of similar negligence *per se* in failing to anchor the mobile home. As these points are closely interrelated, we will discuss them together.

In deciding this appeal, we must interpret the Manufactured Housing Standards Act ("the Act") TEX.REV.CIV.STAT.ANN. art. 5221f (Vernon 1987), and its accompanying regulations, 16 TEX.ADMIN.CODE § 69.121 (West 1988) (Dept. of Labor and Standards, Installation Responsibilities). We are the first appellate court in Texas to do so. We will begin, therefore, by setting out the trial court's rulings on the Act. In granting partial summary judgment, it held the following:

The Court finds that Defendant GEM HOMES, INC., formerly known as AD-VANTAGE HOUSING, INC., was fully responsible for the complete installation of the manufactured home sold to Co–Defendant COKE D. BARTON AND WIFE, DINETTE BARTON under the provisions of Section 69.121 of the Texas Department of Labor and Standards Manufactured Housing Rules. The Court further finds

that Defendant GEM HOMES, INC., formerly known as ADVANTAGE HOUS-ING, INC., failed to tie down the manufactured home or have it tied down as required by V.A.T.S. Article 5221f and Chapter 69 of the Texas Department of Labor and Standards Manufactured Housing Rules. The Court further finds that the Plaintiffs are within the group of persons to be protected by V.A.T.S. Article 5221f and Chapter 69 of the Texas Department of Labor and Standards Manufactured Housing Rules. The Court further finds that the attempt by Defendant GEM HOMES, INC., formerly known as AD-VANTAGE HOUSING, INC., to have Co–Defendant COKE D. BARTON AND WIFE, DINETTE BARTON waive the statutory requirement that Defendant GEM HOMES, INC. remain fully responsible for the complete installation of the manufactured home by insertion of the words "delivered only, no set-up or hook-up" is against public policy and void pursuant to V.A.T.S. Article 5221f Section 18(a). The Court finds, that as a matter of law, these acts and/or omissions constitute negligence per se.

Gem Homes complains of that portion of the jury charge which read:

Did the negligence, if any, of those named below proximately cause the death and injury in question?

In regard to this question, you are hereby instructed that under the law of Texas, Gem Homes, Inc., was responsible for tying down the mobile home in question at the time it was delivered to Coke D. Barton. Therefore, the failure of Gem Homes, Inc., to tie down the mobile home constitutes negligence as a matter of law, that is to say, negligence in itself.

In answering this question, the jury found that all parties inquired about were negligent, and bore some measure of causal responsibility: Gem Homes, Osvaldo J. Contreras, Sr., Magdalena Contreras, and Coke D. Barton.

◼ Negligence *per se* is the unexcused violation of a legislative enactment. Courts adopt statutes as standards for negligence where the statute's purpose is to protect

from the regulated hazards that class of persons to which the injured litigant belongs. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 549 (Tex.1985); *Carter v. William Sommerville and Son, Inc.*, 584 S.W.2d 274, 278 (Tex.1979); *Wilson v. Goodyear Tire & Rubber Co.*, 753 S.W.2d 442, 445 (Tex.App.—Texarkana 1988, writ denied). In passing the Texas Manufactured Housing Standards Act, the legislature found:

> [I]t is the responsibility of the state to provide for the *protection of its citizens who desire to purchase housing by imposing certain regulations on the construction and installation*, to provide economic stability of manufactured housing manufacturers, retailers, installers, and brokers, and to provide fair and effective consumer remedies.... Accordingly, this Act shall be liberally construed and applied to promote its underlying policies and purposes. [Emphasis added]. TEX.REV.CIV.STAT.ANN. art. 5221f, § 2.

The Legislature designed this statute to protect consumers of manufactured housing from unregulated construction and installation (or lack thereof). The Texas legislature, in passing this Act, recognized that the welfare and safety of mobile home residents was not adequately protected by then-existing laws. The events which led to this lawsuit are one compelling example of exactly those risks this Act was designed to prevent. Defendant's own expert, Dr. James McDonald, testified that "[m]any of the deaths in windstorms are attributed to occupants of mobile homes. In some years, *half* the deaths can be attributed to windstorms and occupants in mobile homes." [Emphasis added].

We find that Magdalena Contreras and her family clearly fall within that class the statute was designed to protect: all persons in Texas purchasing or living in manufactured housing. We also find that the hazard causing Ms. Contreras's death, an unanchored mobile home buffeted by extreme West Texas weather, was one of the dangers the statute was intended to prevent. The next question to confront us, then, is: did Gem Homes violate any duty imposed upon it by the Act?

In determining this, we must examine both the Texas Manufactured Housing Stan-

dards Act and the Texas Department of Labor and Standards Manufactured Housing Rules. The Act contains the following relevant provisions:

> Sec. 3. Whenever used in this Act, unless the context otherwise requires, the following words and terms have the following meanings:
>
> .    .    .    .    .
>
> (k) 'Installation,' when used in reference to manufactured housing, means the transporting of manufactured homes or manufactured home components to the place where they will be used by the consumer, the construction of the foundation system, whether temporary or permanent, and the placement and erection of a manufactured home or manufactured home components on the foundation system, and includes supporting, blocking, leveling securing, anchoring, and proper connection of multiple or expandable sections or components, the installation of air conditioning, and minor adjustments.
>
> (*l*) 'Installer' means any person, including a retailer or manufacturer, who performs installation functions on manufactured housing.
>
> .    .    .    .    .
>
> Sec. 7(d) A person may not perform any installation functions on manufactured housing in the state, unless the person possesses a valid installer's certificate of registration and files proof of insurance as required by the commissioner. The commissioner may issue a temporary installer's certificate of registration to a homeowner for the installation of the owner's home....
>
> Sec. 18(a) Any waiver by a consumer of the provisions of this article is contrary to public policy and is unenforceable and void.

The regulations promulgated under the Act contain these relevant provisions:

> (a) The responsibility for the proper installation of all manufactured homes shall be that of the contracting installer. The contracting installer is the person

who by statute, contract, or agreement is obligated to the consumer for the installation of the manufactured home.

. . . . .

(2) Used manufactured homes. The person contracting with the consumer for the installation of the used manufactured home is responsible for, and warrants, the installation of the used manufactured home.

(A) The selling retailer is the contracting installer if the retail sales contract or agreement provides for, or includes, the installation of the used manufactured home at the homesite.

(B) The installer contracting with the consumer for the relocation of a used manufactured home from a sales location or a homesite (secondary move) to a new homesite is the contracting installer for such installation.

(b) The contracting installer is fully responsible for the complete installation even though the contracting installer may subcontract certain installation functions to independent contractors pursuant to Standards Act, § 7(j). 16 TEX.ADMIN.CODE § 69.121.

From these rules, we draw the following conclusions:

(1) All manufactured housing must be installed at the homesite, which includes anchoring the home to a foundation.

(2) Installation must be performed by a person possessing a valid certificate from the State.

(3) A person may obtain this certificate by registering and providing proof of insurance with the Texas Department of Labor and Standards; homeowners may obtain temporary certificates for installation of their own manufactured housing.

▮▮▮ If a retailer sells a used manufactured home, that retailer is responsible for installing the home if:

(1) the retailer contracts to install the house; *or*

(2) the retailer contracts to relocate the house from either a sales lot or previous homesite.

(3) If either of these situations apply, the retailer remains fully responsible for installation, even though it may subcontract certain functions.

(4) Any agreement which purports to limit responsibility to delivery without installation is void.

As we read these regulations, the only time a retailer does *not* remain obligated for installation of used manufactured housing is when the retailer assumes no responsibility for moving the used home from its sale site to a new homesite. We find this interpretation consistent with the Legislature's intent to improve the safety of manufactured housing and protect consumers, as it promotes installation by certified, experienced professionals in the maximum number of purchases. The persons most capable of installing these homes should be those in the business of selling and transporting them. We therefore hold that the seller of a used manufactured home may avoid responsibility for installation only where the sale does not include transport to a new site. In those cases, the transporter agreeing to relocate the home becomes the contracting installer.[1] In all other cases, including the one here, the seller retains the duty to install the home on site.

The legislature obviously intended that transporting mobile homes and installing them should be done, in all cases, by a person qualified to do so safely and well. We glean this from the Act's statement of purpose, its definition of installation (which includes transporting the home), its requirement that installers be certified, and from the regulations requiring that someone always remain responsible for installation, whether that person is retailer or transporter. In our case, Gem Homes contracted to deliver the mobile home purchased by the Bartons and inhabited by the Contreras fam-

---

1. This, too, complies with the Act's purpose, as the person contracting for relocation then becomes the contracting installer. Whether seller or transporter becomes the contracting installer, someone in the mobile home business, certified by the State and presumably with the necessary equipment and expertise, remains accountable for securing the home.

ily. Gem Homes attempted to limit its responsibility to "delivery only," but the law did not allow the seller to transport the home while avoiding the obligation to install it. The contract attempting to do so was void. Gem Homes could not even legally subcontract the installation of the home to Barton or Contreras unless those homeowners first obtained a certificate of registration and insurance from the State. Even then, Gem Homes as contracting installer would remain ultimately responsible for installation. For these reasons, the trial court correctly found Gem Homes negligent as a matter of law in failing to install the mobile home it sold and transported. Gem Homes' Point of Error One is overruled.

By the same token, the trial court properly instructed the jury on the law concerning anchoring mobile homes, and that Gem Homes was negligent as a matter of law. Gem Homes' Points of Error Three and Four are overruled.

■■■ Finally, Gem Homes' Point of Error Five urges that the trial court erred in failing to submit an instruction that Barton and Contreras were contracting installers and, as such, negligently failed to anchor the mobile home. Gem Homes' proposed instruction reads:

> The law requires all mobile homes be anchored by an installer or homeowner installing such owner's mobile home. Failure to comply with this law is negligence in itself.

Under Tex.Admin.Code § 69.121(b), once Gem Homes agreed to deliver the mobile home, it became the contracting installer and retained responsibility for installation. This is so even if it contracted with the homeowner to perform certain installation chores, or if it simply disclaimed any responsibility for installation. Gem Homes could not legally subcontract with the homeowner, moreover, unless that homeowner possessed a certificate from the State. The law did not impose any duties upon Barton or Contreras just because they took it upon themselves to install the mobile home. Although the jury was entitled to find their negligence contributed to the tragedy here (and the jury did), nowhere did the law mandate a finding of liability against Contreras as consumer or Barton as owner.

■■■ Further, Gem Homes' proposed instruction does not accurately state the law. The law requires that a contracting installer anchor the mobile home; the statute does not assign the homeowner any specific responsibility for installation. This is consistent with our view of the legislature's purpose in passing this law: to promote safe, professional, experienced installation of these units. A proper instruction is one that both assists the jury and is legally correct. *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 822 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dismissed*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). Gem Homes' requested instruction did not accurately reflect the law as the trial court and this appellate Court perceive it, and the trial judge properly refused to charge the jury upon it. The instruction accurately reflected the law. We overrule Point of Error Five.

### EXCLUSION OF "DELIVERY ONLY" SALES CONTRACT, LACK OF CONSIDERATION FOR INSTALLATION, BARTON'S OBLIGATION TO INSTALL, CUSTOM, AND STANDARDS WITHIN INDUSTRY, AND EVIDENCE SHOWING ACT INTERPRETATION WAS NEW

■■■ In its Points of Error Six through Eleven, Gem Homes challenges the trial court's exclusion of its sales contract with the Bartons, related evidence showing that Barton paid Gem Homes nothing for installation, and that Barton as buyer obligated himself to install the trailer. In its Points of Error Twelve through Fourteen, Gem Homes urges that the trial court improperly excluded evidence of the mobile home industry's customs and standards on "delivery only" contracts; that this case was the first to construe Texas regulations requiring anchoring of mobile homes; and of Gem Homes' own interpretation of the installation regulations and standards to allow "delivery only" contracts. To the extent the trial court actually did exclude this evidence, we find there was no error.

What Gem Homes wanted to achieve by introducing this evidence was, at bottom, a second bite at the statutory interpretation apple. Having lost this issue on summary judgment when the trial court decided Gem Homes bore installation responsibilities for the mobile home as a matter of law, it nevertheless attempted to present the matter a second time for the jury's consideration.[2] The Act placed upon Gem Homes the duty to install mobile homes it transported. Gem Homes' "delivery only" contract, which operated in contravention of the Act, was void as a matter of public policy; the trial court properly excluded it from evidence. A contract which was directly contrary to the law given the jury by the court would only confuse the fact finder. Consideration of industry practice in violation of the Act, no matter how common that practice might be, would likewise only confuse the jury on the law as given them by the court.

Moreover, the trial court allowed Gem Homes extensive cross-examination on the issues of fault and responsibility. Counsel elicited testimony from Osvaldo Contreras, Sr. on the methods he could have used to tie down the trailer, using materials easily available to him. Counsel cross-examined Coke Barton on this topic as well. Counsel elicited from Contreras the statement that he blamed Barton, not Gem Homes, for the destruction of his home and his wife's death. Several witnesses opined that it is always dangerous to remain in a mobile home during high winds, anchored or not, thus raising the issue of Magdalena Contreras's responsibility for her own death. The jury found all parties bore some fault, indicating that they carefully considered all the evidence of negligence.

Moreover, the trial court allowed Gem Homes' representative, Jack R. Henry, to give his interpretation of the relevant regulations. That testimony was:

Q: Mr. Henry, would you tell us whether as part of your duties as—in quality

assurance, as vice-president of public affairs, you have had occasion to review and deal with State law and State law codes, and administrative regulations, concerning anchoring or tying down of used mobile homes?

A: Yes.

Q: Okay. Would you tell us whether, under your interpretation of those laws and those regulations, as applied to the facts that you've heard brought out in this case, with respect to the used mobile home, whether under your interpretation Gem Homes was responsible under the law and the regulations for anchoring the Contreras's mobile home?

. . . . .

A: Gem Homes was not responsible to tie it down.

Generally, relevant evidence is admissible; relevant evidence, however, is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CIV.EVID. 401. Even relevant evidence may be excluded if its probative value is outweighed by unfair prejudice, confusion of the issues, or the tendency to mislead the jury. TEX.R.CIV.EVID. 403. The issue of Gem Homes' negligence was not before the jury; it had been decided by the trial court as a matter of law. Gem Homes' subjective belief of what the law required was irrelevant, as was evidence that this was the first court case construing the Act, and as were the customs and standards of the mobile home industry.[3] The legislature imposed the relevant standard, Gem Homes did not comply with it (however ignorantly), and that was a matter of law, not fact. The trial court allowed some truncated testimony evidence that Gem Homes believed its "delivery only" contract was valid. The trial court correctly excluded the remainder of evidence

---

2. This reminds us of the defendant's right, in a criminal case, to present his motion to suppress evidence first to the judge for determination as a matter of law, and then (if the motion is denied) to the jury for determination as a matter of fact. There is no analogous right in a civil case.

3. If punitive damages had been an issue in this case, exclusion of this evidence might be reversible error. That issue, however, is not before us.

on these matters. Points of Error Six through Fourteen are overruled.

## JURY CHALLENGES

In its Point of Error Fifteen, Gem Homes claims the trial court erred in overruling two challenges for cause lodged against members of the jury panel. We find that Gem Homes has waived error on this point. To preserve error on refusal to strike jurors for cause, *prior* to exercising its preemptory challenges, the complaining party must inform the trial court that: (1) it must exhaust its peremptory challenges; and (2) after exercising all peremptory strikes, specific objectionable jurors will remain on the jury. *Hallett v. Houston Northwest Medical Center*, 689 S.W.2d 888, 890 (Tex. 1985); *Lopez v. Southern Pacific Transportation Co.*, 847 S.W.2d 330, 332-33 (Tex. App.—El Paso 1993, no writ). Here, although Gem Homes timely moved to strike the objectionable jurors for cause, it did not inform the court that other objectionable jurors would remain on the panel until *after* it had exercised its peremptory strikes. This came too late to preserve error on the point. *Id.* Point of Error Fifteen is overruled.

## CAUSATION PROOF

In its Point of Error Sixteen, Gem Homes argues that plaintiffs did not prove Magdalena Contreras's death was caused by the failure to anchor the mobile home; it urges that her death would have been just as likely had the mobile home been properly anchored. This point is framed as neither a legal nor factual sufficiency challenge, but the relief Gem Homes seeks is remand and new trial. We will construe this point as a challenge to the factual sufficiency of the evidence to sustain the judgment, and analyze it accordingly. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Osvaldo Contreras, Sr.'s testimony indicates that he watched a properly anchored mobile home lose its roof during the storm that killed his wife, and the side of that structure bent, but it otherwise remained intact. Further, Contreras testified that he could recognize a tornado, and the storm that killed his wife, although violent, was no tornado. Coke Barton testified that although other mobile homes were damaged in the storm, the Contreras's home was the only one that had overturned, and he had heard of no other injuries from the storm. Plaintiffs' expert meteorologist, Dr. John C. Freeman, testified that in his opinion it was not a tornado that destroyed the Contreras mobile home; it was a thunderstorm downdraft, a microburst, that did the damage. About five microbursts a month occur in West Texas during thunderstorm season. He also testified that, although the Contreras mobile home would have been damaged in the storm had it been tied down, it would not have rolled over. Kenny Batla, a neighbor, testified his own mobile home would have overturned in the storm had it not been tied down. Although the Herring mobile home, close by the Contreras home, was destroyed in the storm and was tied down, it was over twenty years old and had been tied down in 1976. Moreover the weakest part of the Herring trailer was its roof, not its anchors, and the roof is what collapsed. The single most important thing that would have made the Contreras mobile home more wind-resistant would have been proper anchoring in the ground. The weak link in the Contreras home was its lack of anchoring, which allowed it to "vault," or roll over.

We find this evidence sufficient to overcome a factual sufficiency challenge to the evidence, and overrule Gem Homes Point of Error Sixteen.

## CUMULATIVE ERROR

In its final point Gem Homes urges that even if no single point of error is enough standing alone to warrant reversal, that the cumulative effect was such that Gem Homes was denied a fair trial. It is true that even where a case contains several errors not considered reversible in themselves, we may consider them together to determine if their combined impact denied defendant a fair trial and due process of law. *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 695 (Tex.App.—Texarkana 1991, writ denied). In order to prevail on a cumulative error point, Gem Homes must show that based upon the record as a

whole, but for the errors, the jury would probably have decided in Gem Homes' favor. *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 810 (Tex.App.—Dallas 1987, no writ). We do not perceive cumulative error in this case. It was a difficult case to be sure, presenting matters of first impression in this State, but the trial court did a remarkable job deciding the issues of law and providing all parties with a fair trial. Counsel for all sides performed admirably. Indeed, if defendant's counsel had been less able, Gem Homes might have fared far worse. The jury found that all parties bore some percentage of fault; it rendered take-nothing verdicts against Magdalena Contreras's estate and against her parents; the damages it did award were well within the bounds of reason. We overrule Gem Homes' Point of Error Seventeen.

### JUDGMENT CALCULATIONS

■ In a single cross-point, plaintiffs maintain that the trial court improperly calculated the judgment by reducing the children's awards by Magdalena Contreras's 5% responsibility, by granting Gem Homes a judgment against Osvaldo Contreras Sr. based upon an improper credit for the settlement he received from Coke Barton, and by limiting the prejudgment interest award to past damages only.

■ Plaintiffs argue, based on the doctrine of parental immunity, that the children's awards should not have been reduced by their mother's percentage of fault. Gem Homes claim of contribution against the estate of Magdalena Contreras depends upon whether her children had the right to sue her for damages. A defendant's claim of contribution is derivative of plaintiff's right to recover from the joint defendant against whom contribution is sought. *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex.1992). The right of an unemancipated minor to bring a tort action against his or her parent is restricted by the doctrine of parental immunity. *Felderhoff v. Felderhoff*, 473 S.W.2d 928, 933 (Tex.1971). The purpose of the doctrine is "to prevent the judicial system from being used to disrupt the wide sphere of reasonable discretion which is necessary in order for

parents to properly exercise their responsibility to provide nurture, care, and discipline for their children." *Id.; Jilani v. Jilani*, 767 S.W.2d 671 (Tex.1988). It applies only to those acts that are exercises of parental authority or discretion, such as discipline, supervision, care, and providing the necessities of life. Parental immunity does not include suits by a child when the obligation is one based on employee-employer relationships, *Felderhoff*, 473 S.W.2d at 932–33, or on general societal obligations such as operating a car safely. *Jilani*, 767 S.W.2d at 673. The Supreme Court has characterized the doctrine this way:

> The real objective of parental immunity, as stated in *Felderhoff*, is not to promote family harmony; rather, it is simply to avoid undue judicial interference with parental discretion. The discharge of parental responsibilities such as the provision of a home, food and schooling, entails countless matters of personal, private choice. In the absence of culpability beyond ordinary negligence, those choices are not subject to review in court. *Shoemake*, 826 S.W.2d at 936.

If Magdalena Contreras's acts or omissions leading to her children's damages stem from the parent-child relationship, then, the children could not recover for her negligence, and Gem Homes was not entitled to contribution for her 5% share of responsibility.

■ We find that Magdalena Contreras's only omissions leading to her death were personal parental choices. The record contains no evidence that she was charged with anchoring the mobile home; rather, her failures were continuing to live with her family in the unanchored home during thunderstorm season, and remaining with her children in that home on one particular afternoon when she knew a storm threatened. These decisions fall within the ambit of parental care and supervision. They were acts of discretion for which her children could not have held her legally liable. We agree with plaintiffs, then, that the judgment improperly reduced each of the Contreras children's awards by the 5% responsibility attributed to their mother. We sustain that aspect of the plaintiffs' cross-point.

■ We believe the trial court correctly calculated Osvaldo Contreras, Sr.'s allocation of settlement credit. Gem Homes elected a dollar for dollar settlement credit pursuant to TEX.CIV.PRAC. & REM.CODE 33.012(b) (Vernon Supp.1993). The trial court therefore took the total verdict award for each plaintiff, found their percentage of the total recovery, and multiplied that percentage by the amount of Coke Barton's settlement, thus arriving at the allocation for each. Plaintiffs argue that the trial court should have mirrored the proportionate share of the settlement proceeds which each plaintiff actually received (Osvaldo Contreras, Sr. received 63.4%, each of the children received 7.5%, and their attorneys received the remainder). We disagree. Plaintiffs decided allocation of those settlement proceeds among the family; the division had nothing to do with the damages which the jury found, and clearly was done to give the family immediate access to the greatest amount of money. We find the trial court's decision to base allocation of settlement credit upon the percentage of damages found by the jury, rather than a percentage decided by the plaintiffs themselves for reasons of their own, is a more equitable method of assessing the credit. That portion of plaintiffs' cross-point is overruled.

■ Finally, plaintiffs urge they were entitled to prejudgment interest on the entire judgment, including the award of future damages. We acknowledge this issue is pending before the Texas Supreme Court for review. *C & H Nationwide, Inc. v. Thompson*, 810 S.W.2d 259 (Tex.App.—Houston [1st Dist.] 1991, writ granted). Lacking high court guidance at this writing, however, we hold along with a number of our sister courts that the language of TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6 indicates the legislature did not intend to segregate past and future damages when assessing prejudgment interest:

Judgments in wrongful death, personal injury, and property damage cases must include prejudgment interest.... *[P]rejudgment interest accrues on the amount of the judgment* during the period beginning on the 180th day after the date the defendant receives written notice....

TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(a). [Emphasis added].

Because the Texas Supreme Court had previously declared that prejudgment interest applied only to past damages, *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 555 (Tex.1985), we must conclude that the legislature, by including the whole judgment in this statutory provision in the face of *Cavnar's* limitation, intended prejudgment interest to accrue on the entire award. *Wal–Mart Stores, Inc. v. Berry*, 833 S.W.2d 587 (Tex. App.—Texarkana 1992, no writ); *Hughes v. Thrash*, 832 S.W.2d 779 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Sisters of Charity of the Incarnate Word v. Dunsmoor*, 832 S.W.2d 112 (Tex.App.—Austin 1992, no writ). We therefore sustain that portion of plaintiffs' cross-point.

### CONCLUSION

We affirm in part, and reverse and remand in part. Upon remand, the trial court shall reform the judgment to reflect: (1) no reduction of the child plaintiffs' awards for their mother's percentage of fault, and (2) prejudgment interest on the entire judgment.