**DRILEX SYSTEMS, INC., Masx Energy Services Group, Inc., and Masco Industries, Inc., Appellants,**

v.

**Jorge FLORES and Maria Flores, Individually and As Parents of Gina Marie Flores, Jose Luis Flores and Georgette Nicole Flores, Minors, Appellees.**

No. 04–94–00586–CV.

Court of Appeals of Texas, San Antonio.

Dec. 18, 1996.

Rehearing Overruled Feb. 9, 1998.

John A. Sullivan, III, Veronica Henriquez, Marla J. Briscoe, Filteau, Sullivan & Georgantas, P.C., Houston, for appellants.

Terry E. Baiamonte, William R. Edwards, III, Edwards, Terry, Baiamonte & Edwards, Corpus Christi, Romero Molina, Frank R. Nye, Jr., Law Offices of Frank R. Nye, Jr., Rio Grande City, for appellees.

Before CHAPA, C.J., and RICKHOFF and LOPEZ, JJ.

CHAPA, Chief Justice.

This appeal is from a personal injury judgment in favor of the appellees. The appellants raise five points of error contending: (1) erroneous exclusion of an expert witness; (2) jury charge error; (3) insufficient evidence to support product liability claim; (4) insufficient evidence to support negligence claim; and (5) erroneous allocation of settlement credit. We overrule appellants' first four points of error, but we sustain the fifth point of error relating to the allocation of the settlement credit.

### SUMMARY OF FACTS

Jorge Flores ("Flores") sustained a hand injury while employed as a roughneck/floorhand by Helmerich and Payne ("H & P"). The injury was sustained during the drilling of a well for Amoco Production Company ("Amoco"). The appellees settled with Amoco and proceeded to trial on their product defect and negligence claims against Drilex Systems, Inc., Masx Energy Services Group, Inc. and Masco Industries, Inc. ("Drilex").

Amoco leased a special drilling nipple, also known as a stripper bucket or wiper box (hereinafter "bucket"), from Drilex for use in the drilling of the well where the injury to Flores occurred. The bucket was used to prevent drilling mud from being spilled on the rig floor by removing the mud from the drill pipe as it was extracted from the well. The bucket is moved by attaching a sling containing lifting hooks to the holes located at the top of the bucket. The bucket is then lowered down the drill string to the rotating head by attaching hoisting equipment to the sling. Flores was responsible for clamping the bucket to the rotating head after the bucket was lowered. The bucket must be properly aligned in order to clamp it to the rotating head.

Flores' injury occurred during the process of lowering the bucket. The hooks on the sling slipped out of the bucket's holes when slack in the line removed the tension from the sling. The unattached bucket then slid down the drill string onto Flores' hand, which was resting on top of the rotating head.

Although the record is clear that Drilex leased the bucket to Amoco, the parties dispute whether Drilex also leased Amoco the sling. The appellees allege that both the sling and the bucket were defective, and Flores' injury was caused by Drilex's negligence or product defect. Drilex argued that the injury was a result of operational negligence on the part of H & P's rigging crew and Amoco. Drilex specifically maintained that it was not liable for any defect or negligence attributable to the sling.

### ARGUMENTS ON APPEAL

In five points of error, the appellants argue that the judgment should be reversed based on (1) erroneous exclusion of an expert witness; (2) jury charge error; (3) insufficient evidence to support product liability claim; (4) insufficient evidence to support negligence claim; and (5) erroneous allocation of settlement credit. We will address

the points of error in the order in which they were raised.

### 1. Exclusion of Expert Witness

In the first point of error, Drilex contends that the trial court erred in striking their expert, Randolph Acock ("Acock"). Drilex acknowledges invoking TEX.R. CIV. EVID. 614 (the "Rule"), resulting in the trial court's order that all witnesses be excluded from the courtroom; however, Drilex maintains that experts are exempt from the Rule.

#### a. The Rule and Standard of Review

■ Upon the request of a party, TEX.R. CIV. EVID. 614 and TEX.R. CIV. P. 267(a) require a trial court to order the exclusion of all witnesses from the courtroom in order to prevent them from hearing the testimony of other witnesses. The purpose of the rule is to aid in ascertaining the truth by preventing one witness's testimony from influencing another witness's testimony. *Century 21 Real Estate Corp. v. Hometown Real Estate Co.,* 890 S.W.2d 118, 130 (Tex.App.—Texarkana 1994, writ denied). Both rules provide for the exemption of three classes of witnesses from the Rule: (1) the parties; (2) the designated representative of a party that is not a natural person; and (3) a person whose presence is shown to be essential to the presentation of a party's cause. TEX.R. CIV. EVID. 614; TEX.R. CIV. P. 267(b). In addition to exclusion from the courtroom, the court is required to instruct the witnesses that they are not to converse with each other or any other person regarding the case, except the attorneys. TEX.R. CIV. P. 267(d).

■ In reviewing a trial court's refusal to allow testimony based on a violation of TEX.R. CIV. EVID. 614 and TEX.R. CIV. P. 267, the standard of review is whether the trial court abused its discretion. *See Pierson v. Noon,* 814 S.W.2d 506, 509 (Tex.App.—Houston [14th Dist.] 1991, writ denied). Abuse of discretion is not shown by the fact that the trial court excluded testimony vital to a party's case or that the appellate court would have decided differently. *Gaines v. Frawley,* 739 S.W.2d 950, 955 (Tex.App.—Fort Worth 1987, no writ). Reversible error only exists where the ruling is arbitrary and unreasonable. *Pierson,* 814 S.W.2d at 509.

#### b. Analysis

■ Although expert witnesses are typically found to be exempt from the Rule as a person whose presence is essential to the presentation of a party's cause, the Rule itself does not expressly exempt all expert witnesses. *See Elbar, Inc. v. Claussen,* 774 S.W.2d 45, 52 (Tex.App.—Dallas 1989, writ ref'd n.r.e.). Furthermore, it would not appear that an exemption from exclusion from the courtroom thereby permits a witness to freely converse with the parties and other witnesses regarding the case. Allowing an expert witness to be present and hear sworn testimony regarding the facts underlying the basis of the expert's opinion is far different than permitting the expert to openly discuss the testimony with the parties and other expert witnesses.

■ No effort was made by appellants to have the trial court exclude Acock from the Rule when it was invoked by requesting a finding that Acock's presence was essential to the presentation of appellants' case. In fact, Acock testified in his Bill of Exceptions that hearing the testimony given in the courtroom was not necessary to the formation of his opinions. Furthermore, it is clear from the record that not only was Acock present during the testimony of another witness after the Rule was invoked, but he also discussed the case with the party's representative and another expert witness. Therefore, the trial court did not abuse its discretion in striking Acock as an expert witness.

■ Even assuming that the trial court did err in excluding Acock, the error would not be grounds for reversal unless it amounted to such a denial of the appellants' rights that it probably caused the rendition of an improper judgment. TEX.R.APP. P. 81(b)(1). Error in the exclusion of evidence does not require reversal if it is cumulative of other evidence. *Mentis v. Barnard,* 870 S.W.2d 14, 16 (Tex.1994). Based on the record in the case at bar, Acock's testimony would have been cumulative of other testimony and

evidence. Therefore, excluding Acock's testimony would not constitute reversible error.

Appellants' first point of error is overruled.

## 2. Error in Jury Charge

In appellants' second point of error, appellants complain that the trial court erred in submitting jury question number 1 [1] and in refusing to submit appellants' jury questions relating to the placement of the sling into the stream of commerce.[2] The appellees contend that the objection to the charge was waived because the appellants' objections were made at the charge conference rather than after the final charge was formally presented by the court. Alternatively, the appellees maintain that the charge was not in error.

■ In order to preserve error to an objection relating to the failure to submit an issue in the jury charge, a party must object, if the question is relied upon by the opposing party, or make a written request for submission in substantially correct wording. TEX.R. CIV. P. 278; *see also Morris v. Holt*, 714 S.W.2d 311, 312–13 (Tex.1986). In *Elbaor v. Smith*, the Texas Supreme Court held that error regarding the trial court's charge was preserved where the plaintiff objected to the charge during the charge conference and submitted issues in substantially correct wording. 845 S.W.2d 240, 245 (Tex.1992). The record in the case at bar indicates that the appellants objected to jury question number 1 at the charge conference and submitted requested jury questions which were endorsed by the court as denied. Therefore, the appellants properly preserved their objection to the jury charge.

■ Broad-form questions must be submitted in jury cases whenever feasible. TEX.R. CIV. P. 277; *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 255 (Tex.1974); *Texas Dep't of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). However, the submission of a question to the jury which assumes the existence of a disputed material fact constitutes error. *Otto Vehle & Reserve Law Officers Ass'n v. Brenner*, 590 S.W.2d 147, 150 (Tex.Civ.App.—San Antonio 1979, no writ). The appellants argue that jury question number 1 commented on the weight of the evidence and permitted the jury to assume that Drilex placed the sling into the stream of commerce, which was disputed at trial.

■ The jury question addressed the product defect theory of liability in broadform. In order to answer "yes" to jury question number 1 based on a defect in the sling, the jury must have found that Drilex supplied the sling. Therefore, the jury question was proper. Appellants' second point of error is overruled.

## 3. Sufficiency of the Evidence

Appellants' third and fourth points of error raise concerns regarding the sufficiency of the evidence to support the product defect and negligence findings. The appellees counter that sufficient evidence was presented to support the jury's findings with respect to both claims.[3]

### a. Standard of Review

In reviewing a challenge raising insufficiency of the evidence, the court must consider and weigh all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986)(per curiam). The verdict should be set aside

---

**1.** Question No. 1 reads as follows:
"Was there a design defect in any of the equipment supplied by Drilex Systems, Inc. that was a producing cause of the occurrence in question."

**2.** The appellants proposed the submission of three additional questions including the following:
"Do you find by a preponderance of the evidence, considering only direct evidence, that Drilex Systems, Inc. was engaged in the business of selling slings, such as that which was being used to lift the special drilling nipple on

April 5, 1989, at the time of the plaintiff's injury?"

**3.** Admittedly, the appellants created some confusion with respect to the waiver issue raised by the appellees by their references to "Drilex's motion for judgment on verdict" in addressing the fifth point of error in appellants' brief and in certain oral statements made by Mr. Sullivan, the attorney for appellants. However, it is clear that Mr. Sullivan did not agree to the motion or entry of judgment. The motion for judgment was filed by the appellees, and Mr. Sullivan's approval was as to the form of the judgment.

only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.*

### b. Analysis

 There was sufficient evidence to support the jury findings. Numerous witnesses, who had considerable experience in well operations, testified that the sling was customarily delivered by the same service company delivering the bucket, and the evidence clearly shows that Drilex delivered the bucket. In addition, testimony was presented that the color of the sling was the same color used by Drilex to identify its equipment in the industry. Numerous witnesses also testified that using safety hooks on the sling would have prevented it from slipping out of the holes in the bucket. Franklin Johnson, a mechanical and safety engineer, also testified that attaching a permanent sling to the bucket would have alleviated this problem. Both Drilex's representative and Johnson testified that it was foreseeable that the rigging crew could simply hook the open hooks of the sling to the holes in the top of the bucket which occurred in the case at bar. Several witnesses also testified that the holes in the bucket were too large for the hooks on the sling, and Drilex's representative confirmed that there was no consistency with respect to the size of the holes.

Since there was sufficient evidence to support the jury's findings, appellants' third and fourth points of error are overruled.

### 4. Allocation of Settlement Credit

In appellants' fifth point of error, the appellants assert that the trial court incorrectly allocated the settlement credit, citing *Gem Homes, Inc. v. Contreras*, 861 S.W.2d 449 (Tex.App.—El Paso 1993, writ denied). Prior to the trial of this case, the appellees settled with Amoco and elected a dollar for dollar settlement credit under TEX. CIV. PRAC. & REM.CODE §§ 33.012(b), 33.014 (Vernon Supp.1997). The Agreed Judgment entered against Amoco specifically set forth the settlement amount for each of the plaintiffs as follows:

| CLAIMANT | SETTLEMENT AMOUNT |
|---|---|
| Jorge and Maria Flores | $425,000.00 (lump sum) |
| Jorge Flores | $266,730.00 (Individually) |
| Gina Flores | $ 29,374.00 (Individually) |
| Jose Flores | $ 27,286.00 (Individually) |
| Georgette Flores | $ 26,285.00 (Individually) |

Where a claimant has settled with one or more persons, the court is required to reduce the amount of damages to be recovered by the claimant by an amount computed in accordance with TEX. CIV. PRAC. & REM.CODE § 33.012(b) (Vernon Supp.1997). There are two optional means of calculating the credit:

(1) the sum of the dollar amount of the settlements; or

(2) a dollar amount equal to the sum of the following percentages of damages found by the trier of fact:

(A) 5 percent of those damages up to $200,000;

(B) 10 percent of those damages from $200,001 to $400,000;

(C) 15 percent of those damages from $400,001 to $500,000; and

(D) 20 percent of those damages greater than $500,000.

TEX. CIV. PRAC. & REM.CODE § 33.012(b) (Vernon Supp.1997). The method that will be used is determined by the election of any defendant, or, in the absence of such an election, the percentage method is used. TEX. CIV. PRAC. & REM.CODE § 33.014 (Vernon Supp.1997). In the case at bar, the appellants clearly elected to have the settlement credit calculated in accordance with the first option. However, the parties disagree as to the manner in which the settlement credit should have been applied.

The jury determined that Drilex was 60% responsible for the damages to Mr. Flores, Amaco was 30% responsible, and Mr. Flores was 10% responsible. The specific jury awards and the judgment of the court are set out as follows:

| CLAIMANT | JURY AWARD | JUDGMENT AWARD |
|---|---|---|
| Jorge Flores | $2,000,000.00 | $1,929,047.73 |
| Maria Flores | $ 100,000.00 | $ 0.00 |
| Gina Flores | $ 15,000.00 | $ 0.00 |
| Jose Flores | $ 15,000.00 | $ 0.00 |
| Georgette Flores | $ 15,000.00 | $ 0.00 |

 Where there has been a lump sum settlement with multiple claimants, the settlement credit applicable to those claimants should be based on each claimants percentage of the total jury verdict. *Garza v.*

*Estate of Salinas,* No. 04–96–00516–CV, —— S.W.2d ——, 1997 WL 531138 (Tex. App—San Antonio, Nov. 13, 1996, n.w.h.); *see C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 318–19 (Tex.1994); *Gem Homes,* 861 S.W.2d at 460. However, where individual settlements have been reached with individual claimants, the settlement credit should be based on "the sum of the dollar amounts of all settlements" involving the individual claimant as provided by the statute. TEX. CIV.PRAC. & REM.CODE ANN. § 33.012 (Vernon Supp. 1997); *see Garza,* —— S.W.2d at —— (Tex.App—San Antonio 1996, n.w.h.).

In this case, we are faced with a situation involving the application of both the method to be used for lump sum settlements to multiple claimants and the method to be used for individual settlements.

■ Specifically, Jorge and Maria Flores received a lump sum settlement of $425,000.00. Applying the percentage method required for lump sum settlements as to Jorge Flores, we conclude that 1) the total jury award for both claimants was $2,100,000.00; 2) deducting 10% for the contributory negligence of Jorge Flores reduces the total award for both claimants to $1,890,000.00;[4] 3) the reduced award to Jorge Flores in the amount of $1,800,000.00 is 95.2380952% of the total reduced award for both Jorge and Maria Flores; 4) 95.2380952% of the lump sum settlement amounts to $404,761.90; 5) deducting $404,761.90 from the reduced award to Jorge Flores reduces his award to $1,395,238.10; and 6) further crediting this amount with the $266,730 individual settlement to Jorge Flores reduces his award to a net amount of $1,128,508.10.

■ As to Maria Flores, we conclude that 1) the total jury award for both Maria and Jorge Flores was $2,100.000.00; 2) deducting 10% for the contributory negligence of Jorge Flores reduces the total award for Maria Flores to $90,000.00; 3) the reduced award to Maria Flores in the amount of $90,000.00 is 4.7619047% of the total reduced award for both Jorge and Maria Flores; 4) 4.7619047% of the lump sum settlement amounts to $20,-238.09; 5) deducting $20,238.09 from the reduced award to Maria Flores reduces her award to a net amount of $69,761.91.

The jury awards to Gina, Jose, and Georgette Flores are far below the amounts of each of their individual settlements. Applying a dollar for dollar credit of the individual settlement amount to the jury awards, we conclude that the trial court correctly awarded each child $0.00.

Accordingly, the judgment is reformed to reflect an award of $1,128,508.10 to Jorge Flores, $60,761.91 to Maria Flores, and $0.00 to Gina, Jose, and Georgette Flores. As reformed, the judgment is affirmed.

RICKHOFF, Justice, dissenting.

I respectfully dissent as to the majority's allocation of the settlement credit. The appellants elected to have the settlement credit calculated in accordance with the first option ... "the sum of the dollar amount of the settlements." The disagreement is with the manner in which the settlement credit should have been applied. As in *Gem Homes, Inc. v. Contreras,* 861 S.W.2d 449 (Tex.App.—El Paso 1993, writ denied), the appellants argue that the trial court should have allocated the total amount of the settlement credit based on each appellee's percentage of the total jury verdict. *See Gem Homes,* 861 S.W.2d at 460. The appellees, on the other hand, argue that the trial court correctly allocated the settlement credit based on the settlement proceeds actually received by each appellee.

In *C & H Nationwide, Inc. v. Thompson,* the Texas Supreme Court provided some insight as to the manner in which a settlement credit equal to the "sum of the dollar amount of all settlements" should be applied to reduce an actual jury verdict. 903 S.W.2d 315 (Tex.1994). In that case, the total amount of the plaintiffs' damages awarded by the jury, plus stipulated funeral expenses, was $8,205,702.35. *Id.* at 317. All three defendants elected to have the damages reduced by the "sum of the dollar amount of all settlements" in accordance with TEX. CIV. PRAC. & REM.

---

4. The 10% contributory negligence deduction was taken from the award to both Jorge and Maria, resulting in a reduced award of $1,800,- 000.00 to Jorge and a reduced award of $90,- 000.00 to Maria. The combined reduced award thus becomes $1,890,000.00.

CODE § 33.012(b)(1). *Id.* at 318. Accordingly, the Texas Supreme Court noted that the plaintiffs' damages were reduced by the $6 million the plaintiffs received from two of the defendants. *Id.* Thus, the Texas Supreme Court tacitly approved the trial court's computation of judgment damages by subtracting the total amount of the settlement credit from the total amount of the damages awarded by the jury. *See id.* at 318–19. The manner in which the judgment damages were then allocated among the plaintiffs, however, is unclear from the decision in *C & H Nationwide.*

This implied reasoning in *C & H Nationwide* is consistent with the statutory definition of claimant contained in Chapter 33 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE § 33.011(1) (Vernon Supp.1996). In an action where a party seeks recovery of damages for injury to another person, the term "claimant" is defined to include both the injured person and any party seeking recovery of damages for the injury to that person. TEX. CIV. PRAC. & REM.CODE § 33.011(1) (Vernon Supp.1996). This definition cannot be ignored. We are bound to give it proper consideration in interpreting § 33.012(b) wherein the term appears. *See Tijerina v. City of Tyler,* 846 S.W.2d 825, 827 (Tex.1992) (statutory definitions must be given effect); *Black v. American Bankers Ins. Co.,* 478 S.W.2d 434, 437 (Tex.1972) (entire act must be construed together); *see also* TEX. GOV'T.CODE ANN. § 311.011(b) (Vernon 1988) (words and phrases shall be construed in accordance with legislative definitions).[1] Thus, in the instant case, the term "claimant" as used in § 33.012(b) means all of the appellants because they are all seeking recovery of damages for the injury to Flores. The "sum of the dollar amounts of all settlements," therefore, is the total amount paid by Amoco, and that amount should be the credit by which the damages of the appellants as "claimant" should be reduced.

Although not addressed in *C & H Nationwide,* we conclude that after making the appropriate reduction, the total judgment damages should then be allocated among the appellants based on their respective percentage of the total jury verdict award in order to give effect to the jury verdict. This computation would then reflect the obvious intent of the legislature and the jury's judgment on the evidence.

Appellants' fifth point of error should be sustained, and the judgment reversed and ordered reformed to reflect judgment damages computed in accordance with this straightforward reading of the statutory definition.

---

1. In an effort to ascertain the legislative intent behind the amendment to § 33.011(1) adopting the expanded definition of "claimant," we obtained a transcript of the committee and senate debate regarding the adoption of senate bill 5. Debate on Tex. S.B. 5 before the Senate Committee of the Whole, 70th Leg., tape 2, R.S. 40–43 (June 2, 1987) (transcript available from Senate Staff Services Office). The debate only included an example of the application of § 33.012(b) where one plaintiff sued three defendants and settled with one defendant. *Id.* Therefore, the debate did not aid in the resolution of the issue in the instant case.