**Opinion issued July 11, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00875-CV

_____

**JOHN RUFF AND CATHERINE LOTH, INDIVIDUALLY AND AS NEXT FRIENDS OF A.R., A MINOR CHILD, Appellants**

**V.**

**THE UNIVERSITY OF ST. THOMAS, Appellee**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-19616**

---

## O P I N I O N

Appellants John Ruff and Catherine Loth, as next friends[1] of their daughter,

A.R., appeal the trial court's reduction of the $5,900 damage award made by the

---

[1]     Ruff and Loth brought claims both in their personal capacities and in their capacities as A.R.'s next friends. However, the trial court's judgment

jury for injuries that A.R. sustained on the premises of appellee the University of St. Thomas (the "University"). Ruff and Loth contend that the common-law doctrine of parental immunity, as applied by the Supreme Court of Texas, prohibited the trial court from reducing the award under the apportionment-of-responsibility provisions of Chapter 33 of the Civil Practice & Remedies Code. They also contend that the trial court abused its discretion by declining to adjudge costs entirely in their favor as the "successful parties" in the suit.

Parental immunity prevents Chapter 33 apportionment of responsibility on this record. Our disposition of that issue requires remand to the trial court for a determination of court costs. Therefore, we reverse and remand for further proceedings.

## Background

Ruff and Loth are the parents of A.R., who was one year old at the time of this incident. Ruff and Loth attend religious services at a chapel on the University's premises. During one service in the past, A.R. made some noise, and

---

dismissed their personal-capacity claims, and Ruff and Loth do not present any argument before us contesting that dismissal. Therefore, only the next-friend claims are before us. We will, however, maintain the style of the case as it was in the trial court's judgment. *See Owens v. Handyside*, 478 S.W.3d 172, 175 n.1 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

2

the celebrant of the mass asked them not to bring A.R. into the chapel during services.

Ruff and Loth attended the service in question and, because of the previous request, remained with A.R. in the narthex area just outside the chapel. Loth's sister attended the service too and remained in the narthex area with Ruff, Loth, and A.R.

The University had provided benches in the narthex, which were available for use. While sitting on one of the benches in the narthex, Loth set A.R. on the ground so A.R. could go over to Loth's sister on another nearby bench. While A.R. was moving along the floor, she put her hand on a light fixture embedded in the floor. A.R.'s hand was burned and blistered. Ruff and Loth took A.R. to an emergency-care facility, where A.R. received treatment. She received further treatment at later appointments with her primary-care doctor.

Ruff and Loth, as A.R.'s next friends, sued the University, seeking a recovery for A.R. for the physical pain and mental anguish sustained due to the injuries to her hand. The University answered and pleaded for the application of apportionment of responsibility under Sections 33.003, 33.012(a), and 33.013(a) of Chapter 33.

The suit proceeded to trial. Before evidence was presented, Ruff and Loth moved for a ruling *in limine* prohibiting the University from referencing the

parents' alleged negligence. The University objected to that request, arguing that it pleaded the parents' negligence and Chapter 33 and that it "should be able to allude or make reference to the negligence of the parents in regards to injuries that the child sustained." Ruff and Loth disagreed, responding that "there's no contributory negligence" because "there's been no waiver of a parental immunity." The trial court denied Ruff's and Loth's motion *in limine*, ruling that "the parental-immunity doctrine does not apply here" and that "nobody needs to approach before going into evidence of parental contributory negligence in this case."

During the presentation of evidence, the University's counsel examined Loth about what she was doing when she set A.R. on the ground in the narthex and while A.R. was moving toward Loth's sister. Amid this line of questioning, the University's counsel asked Loth, "so not knowing whether the lights were on or off, you allowed [A.R.] to crawl in the area on the concrete?" This drew an objection from Ruff's and Loth's counsel based on parental immunity, but the trial court responded that it had "ruled on that." Ruff's and Loth's counsel asked for a running objection along those lines. When the University's counsel later returned to the topic, asking Loth, "you could have prevented [A.R.] from touching those lights, couldn't you," Ruff's and Loth's counsel reiterated the running objection, which the trial court overruled.

The suit was submitted to the jury in three questions. Question 1 asked for "Yes" or "No" answers on whether the negligence of either or both of the University or "John Ruff and/or Catherine Loth" proximately caused the injury in question. The jury answered "Yes" in both blanks.

Question 2 was conditioned on "Yes" answers in both blanks in Question 1 and asked for an apportionment of percentages of responsibility between the University and "John Ruff and/or Catherine Loth." The jury found each of the two sides liable for 50% responsibility.

Question 3 asked what sum of money, if paid now in cash, would provide fair and reasonable compensation for A.R.'s injuries, if any, that resulted from the injury in question. The jury answered "$5900" for physical pain and mental anguish sustained in the past, "$0" for physical impairment sustained in the past, and "$0" for disfigurement sustained in the past.

The trial court entered a judgment in A.R.'s favor on the jury's verdict, but awarded A.R. only $2,950, which is 50% of $5,900.

Further, the judgment "ordered that all costs of court are taxed against the party incurring said cost" (all-capitalization removed). The court explained its costs ruling:

> Well, I think that the record speaks for itself on the outcome of this case. And the determination of the award of costs is based on success. And I think in this matter, equity certainly supports splitting the costs. I'm not sure either party was what one would call "successful." The

5

award was not at all what the plaintiff sought. It was less than what the plaintiff was offered in settlement. The attorneys' fees were probably five times at least what the jury awarded in damages. I don't think it's just based on the fact that the plaintiff received an award of damages. I think you have to look at the whole picture. Neither side really won this case. And I think that splitting the costs was fair.

Ruff and Loth appeal the judgment because it reduced A.R.'s $5,900 award by 50% and because it did not adjudge costs entirely in Ruff's and Loth's favor.

**Entry of Judgment With Reduced Award**

In their first issue, Ruff and Loth contend that "[t]he trial court erred in ignoring the doctrine of parental immunity and allowing the jury to apportion fault to" them as "A.R.'s parents." They argue that the trial court erred "in overruling [their] objections and allowing [the University] to argue that the jury should consider parental contributory negligence." And they argue that parental immunity (i) bars the University's "claim of contributory negligence against" them and (ii) makes Chapter 33 an impermissible "argument[,] and the trial court erred in allowing this argument to be presented to the jury and in allowing the jury to consider this argument in deliberations."

To support their parental-immunity-based contention, Ruff and Loth rely on *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933 (Tex. 1992). We discuss *Shoemake* in more detail below, but, there, the Supreme Court of Texas concluded that the court of appeals "erred in reforming the trial court's judgment to reflect a . . . credit in favor of" a premises owner defending against the negligence claims of a mother on

behalf of her child who died from injuries sustained at the owner's swimming pool. *Id.* at 935, 938. The Supreme Court reached its conclusion over the premises owner's claim for contribution against the child's mother for the mother's alleged negligence. *Id.* at 936–38.

Given Ruff's and Loth's arguments, and their reliance on *Shoemake*, we construe their first issue to be a contention that the trial court erred by entering a judgment that did not disregard the jury's finding of 50% responsibility attributable to Ruff and Loth in response to a jury question allegedly rendered immaterial by parental immunity.

## I.    Applicable Law and Standard of Review

A trial court's judgment "shall conform to the pleadings, the nature of the case proved and the verdict, if any . . . ," meaning that a trial court should enter its judgment in accord with the jury's findings. TEX. R. CIV. P. 301. An exception exists when a jury finding is made in response to a question that is "immaterial": a trial court may disregard a jury finding on an immaterial question when entering judgment. *See Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994); *Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 394, 397 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (en banc).

A jury question is immaterial in several instances, one of which is when the question should not have been submitted. *USAA Tex. Lloyds Co. v. Menchaca*, 545

7

S.W.3d 479, 506 (Tex. 2018); *Spencer*, 876 S.W.2d at 157. A question should not be submitted to the jury when the question is "legally defective" or when the question submits a theory that otherwise fails as a matter of law. *See Fazio*, 403 S.W.3d at 394–96 (holding that jury question was "legally defective" because it submitted improper measure of damages); *Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 93 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding that jury question on malicious-prosecution claim should not have been submitted because claim "was foreclosed as a matter of law"); *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 27–28 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (holding that jury question on breach of contract should not have been submitted because alleged contract failed for lack of consideration).[2]

When a judgment is successfully challenged for having improperly disregarded or having improperly failed to disregard immaterial jury questions, we may render the appropriate judgment. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 44–45 (Tex. 2007); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 839–40 (Tex.

---

[2]    *See also Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 795, 797–99, 815–16 (Tex. App.—Houston [14th Dist.] 2019, no pet. h.) (holding that jury questions on breach of fiduciary duty should have been disregarded because no fiduciary relationship existed as a matter of law); *Nelson v. Pasol*, No. 13-15-00379-CV, 2017 WL 3634059, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2017, no pet.) (mem. op.) (holding that jury question was immaterial because it submitted claim that was barred by limitations).

2000); *Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.*, 127 S.W.3d 134, 140–41 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

When a trial court's entry of judgment is challenged for having improperly disregarded or having improperly failed to disregard immaterial jury questions because of a legal issue (as opposed to a factual one), we review the trial court's ruling de novo. *See Markovsky v. Kirby Tower, LP*, No. 01-10-00738-CV, 2011 WL 5429014, at *2 (Tex. App.—Houston [1st Dist.] Nov. 10, 2011, pet. denied) (mem. op.); *Hall*, 292 S.W.3d at 27–28.

## II. Parental Immunity, Chapter 33 Percentages of Responsibility, and Their Interplay

The Texas common-law doctrine of "parental immunity" prevents "an unemancipated minor [from] bring[ing] a tort action against his or her parent" when the parent's "alleged acts of ordinary negligence . . . involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child." *Shoemake*, 826 S.W.2d at 935–36 (citing and quoting *Felderhoff v. Felderhoff*, 473 S.W.2d 928, 929–33 (Tex. 1971)). The doctrine is subject to certain exceptions not relevant here. Trial courts may properly refuse to apply parental immunity if no evidence supports its application or if its proponent fails to bring it to the court's attention. *See Salinas v. Kristensen*, No. 13-08-00110-CV, 2009 WL 4263107, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 25, 2009, pet. denied) (mem. op.) (no

9

evidence); *Hudson v. City of Houston*, No. 14-03-00565-CV, 2005 WL 3995160, at *3 n.8, 7 (Tex. App.—Houston [14th Dist.] Jan. 6, 2005, no pet.) (mem. op.) (parental-immunity appellate issue forfeited under Rule of Appellate Procedure 33.1(a) for failure to have raised parental immunity before trial court).

Parental immunity also restricts a tortfeasor's contribution claim against an injured child's parent in a suit by the parent on the child's behalf. In *Shoemake*, Shoemake's child died from injuries suffered at Fogel's swimming pool. 826 S.W.2d at 935. Shoemake sued Fogel, making (1) a wrongful-death claim in her personal capacity and (2) a survival claim as representative of her child's estate. *Id.* The jury awarded damages on both claims but apportioned to Shoemake 45% of the negligence that caused her child's death. *Id.* Relying on Chapter 33, the trial court reduced Shoemake's wrongful-death award by 45% but did not similarly reduce the child's survival award. *Id.* Shoemake did not appeal the wrongful-death reduction, but Fogel appealed the lack of any reduction of the survival award. *Id.* The court of appeals agreed with Fogel and held "that the requested contribution was available under sections 33.012 and 33.016 of the Texas Civil Practice and Remedies Code,"[3] and reformed the trial court's judgment to reduce the survival

---

[3]    As relevant to this suit, the versions of Sections 33.012(a), 33.013(a), and 33.016 in effect when *Shoemake* was decided are not materially different from the current versions of those statutes. *Compare* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, §§ 2.08, 2.09, 2.11A, 1987 TEX. GEN. LAWS 37,

award. *Id.* Shoemake applied for a writ of error from the Supreme Court of Texas, which reversed the court of appeals. *Id.*

The Court found that "Fogel's claim of contribution depends upon whether [the child]'s estate has the right to recover damages from Shoemake." *Id.* The Court then reviewed parental immunity and the allegations of Shoemake's negligence. *Id.* at 935–36. Because Fogel alleged that Shoemake was negligent in the management, supervision, and control of her child, and because "[t]hose responsibilities entail exactly the sort of parental authority" that parental immunity protects, the child's "estate ha[d] no viable negligence claim against Shoemake," and therefore "Fogel ha[d] no viable contribution claim against Shoemake" for the survival claim. *Id.* at 936, 938. The Court concluded that the court of appeals erred by reforming the trial court's judgment to reduce the survival award. *Id.* at 938. The Court said that "Shoemake's negligence does affect her recovery under the wrongful death statute; but it does not affect the recovery of her child's estate under the survival statute." *Id.*

Chapter 33 requires the factfinder, "as to each cause of action asserted," to "determine the percentage of responsibility" for each "claimant," "defendant," "settling person," and properly designated "responsible third party." TEX. CIV. PRAC. & REM. CODE § 33.003(a)(1)–(4). "This statutory mandate is not

41–44 (amended 1995, 2003, 2005, 2007), *with* TEX. CIV. PRAC. & REM. CODE §§ 33.012(a), .013(a), .016.

11

discretionary . . . ." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 694 (Tex. 2007).

The trial court will then (1) reduce a claimant's recovery "with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility" and, (2) for a liable defendant that is not jointly and severally liable, find that that "liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact equal to that defendant's percentage of responsibility . . . ." *See* TEX. CIV. PRAC. & REM. CODE §§ 33.012(a), 33.013(a); *Roberts v. Williamson*, 111 S.W.3d 113, 122–23 (Tex. 2003). If there are multiple defendants, then an apportionment of responsibility will be made among all liable defendants in the lawsuit as well as any "contribution defendants," who may not have been sued initially. *See* TEX. CIV. PRAC. & REM. CODE §§ 33.015–.016. A liable defendant may recover from a contribution defendant in proportion to the contribution defendant's percentage of liability. *See id.*

*Shoemake* addressed the situation wherein suits are brought by a parent on his or her injured child's behalf and a tortfeasor seeks a reduction in the child's recovery due to the parent's negligence. The Supreme Court noted that the court of appeals had "h[eld] that the requested contribution was available under sections 33.012 and 33.016 of the Texas Civil Practice and Remedies Code." *Shoemake*, 826 S.W.2d at 935. But the Court, in reversing the court of appeals,

12

concluded that the "recovery of [the] child's estate" could not be reduced, due to parental immunity. *Id.* at 938.

Thus, the Court applied parental immunity not only to Section 33.016 contribution apportionments but also to apportionment under Sections 33.003 and 33.012(a). The child's recovery would not be reduced for the negligence of the parent by apportionment between joint tortfeasors because the Court concluded that parental immunity protected the child's estate's recovery from such a reduction.

Further, *Shoemake*'s reasoning extends to Section 33.013 as well, which governs reductions in defendants' liability for damages in proportion to their own percentages of responsibility. That section refers to "a liable defendant" or "each liable defendant." TEX. CIV. PRAC. & REM. CODE § 33.013(a), (b). Parental immunity, when it applies, prevents the parents from being a "liable defendant" with respect to any injuries suffered by their children and prevents the tortfeasor from using Section 33.013(a) to reduce its liability in proportion to any liability that may have been apportioned to the injured child's parents. *See Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 41 (Tex. App.—Tyler 2003, pet. denied).

Both the Eighth and Twelfth Courts of Appeals have applied *Shoemake* in similar ways. In *Gem Homes, Inc. v. Contreras*, 861 S.W.2d 449 (Tex. App.—El Paso 1993, writ denied), Contreras sued Gem Homes for the wrongful death of

13

his wife both in his personal capacity and as next friend to his children. *Id.* at 452. The Contreras family lived in a mobile home sold and delivered to the farm where Contreras worked by Gem Homes. *Id.* No one ever anchored the mobile home to the ground, so when a violent storm later passed through, it upended the mobile home, resulting in the death of Contreras's wife. *Id.* The jury awarded Contreras and his children damages for his wife's death but apportioned 5% of the responsibility to her, and the trial court reduced the award to the children by that 5%. *Id.* at 452, 459. The court of appeals reversed this reduction, relying on *Shoemake* and reasoning that parental immunity applied because Contreras's wife's responsibility stemmed from decisions that "f[e]ll within the ambit of parental care and supervision" and that were therefore "acts of discretion for which her children could not have held her legally liable." *Id.* at 459–60.

In *Plainview Motels*, Reynolds and his minor son were visiting Surplus Sales's premises so Reynolds could look through a stack of mirrors. *Id.* at 28. Several of the mirrors fell over, severely injuring Reynolds and his son, who was standing at his father's feet. *Id.* The jury awarded Reynolds's son damages and apportioned 50% of the negligence to Surplus Sales. *Id.* at 41 & n.10. The trial court did not reduce Reynolds's son's recovery by 50%, and Surplus Sales appealed. *Id.* at 41. The court of appeals referenced Section 33.013(a) but relied on *Shoemake* to apply parental immunity to the statute:

When a defendant is not jointly and severally liable, liability is calculated by multiplying the defendant's percentage of fault by the total amount of damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.013(a) (Vernon 1997). However, where the parental immunity doctrine bars legal action by a child against his parents, that child's recovery from other defendants is not reduced by his parents' percentage of negligence. *See Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 938 (Tex. 1992).

*Id.* (other internal citation omitted).

With the principles of parental immunity in mind, we turn to Ruff's and Loth's issues on appeal.

## III.   Parental Immunity and the Trial Court's Damage Apportionment

The jury awarded $5,900 for A.R.'s injuries. The trial court entered judgment awarding A.R. only half that amount because the jury apportioned responsibility 50% each to the University and "John Ruff and/or Catherine Loth." Ruff and Loth contend that the trial court should have disregarded the jury's apportionment finding in entering judgment.

Ruff and Loth argue that parental immunity applies to the facts underlying their alleged negligence, and the University does not appear to argue otherwise. Ruff's and Loth's alleged negligent acts or failure to act in supervising A.R. fall within the purview of parental supervision and care, which parental immunity protects.

Testimony established that the injury happened when Loth put A.R. on the ground to crawl to Loth's sister sitting nearby. The University's counsel asked

15

Loth, "so not knowing whether the lights were on or off, you allowed [A.R.] to crawl in the area on the concrete?" Ruff's and Loth's counsel objected on parental-immunity grounds, but, because the trial court had denied the earlier motion *in limine*, the court said that it had "ruled on that" already. Ruff's and Loth's counsel asked for a running objection on the topic. When the University's counsel soon thereafter asked Loth, "you could have prevented [A.R.] from touching those lights, couldn't you," Ruff's and Loth's counsel reiterated the running objection, which the trial court overruled.

The University's counsel emphasized the parents' negligence in her closing argument. She read Loth's deposition testimony: "You could have prevented this accident from happening, couldn't you? Response by the Plaintiff, Catherine Loth, 'Yes.' She could have prevented this accident from happening." She contrasted what Ruff and Loth were doing when A.R. was injured with the hypothetical alternatives of "not put[ting] my child on the concrete to crawl, light present or not"; "check[ing] to see if the lights are on"; and not "mak[ing] an assumption" about whether the light was hot but instead touching it herself to check. She concluded, "when you're parenting or when you're responsible for small folks, you don't get to blame someone else when something happens, especially when you're supervising that child."

These questions and arguments are addressed to the sort of "reasonable exercise of parental authority or the exercise of ordinary parental discretion" that parental immunity protects. *See Shoemake*, 826 S.W.2d at 935–36. Therefore, parental immunity applies to the acts forming the basis of Ruff's and Loth's 50% of the responsibility. *See id.* at 935–36, 938; *Plainview Motels*, 127 S.W.3d at 41–42 & n.10; *Gem Homes*, 861 S.W.2d at 459–60.

The apportionment question had only two blanks—one for the University and one for "John Ruff and/or Catherine Loth." But, for purposes of A.R.'s claims, parental immunity prohibits any reduction in the damages to be awarded to A.R. due to any fault apportioned to Ruff or Loth regardless of whether Ruff and Loth were "claimants" or "defendants" under Sections 33.012(a) or 33.013(a) or whether they were "contribution" defendants under Section 33.016. The only purpose for submitting the apportionment question was to achieve a Chapter 33 reduction of damages owed by the University to A.R., which parental immunity barred as a matter of law. Therefore, the question was immaterial, and the jury's answers to it should have been disregarded by the trial court in entering its judgment. *See Fazio*, 403 S.W.3d at 394–96; *Soon Phat*, 396 S.W.3d at 93; *Hall*, 292 S.W.3d at 27–28.

The University argues that parental immunity does not apply here because *Shoemake* dealt with a contribution claim and not with the damages-reducing

effects of apportionment under Sections 33.003, 33.012, and 33.013. The University further argues that "parental immunity does not preclude a jury from apportioning fault" under the applicable statutes.[4]

However, *Shoemake* referred to Section 33.012 and *Plainview Motels* to Section 33.013(a). Neither case can be cited for the proposition that parental immunity reaches contribution apportionment but not apportionment under Sections 33.003, 33.012(a), and 33.013(a). Indeed, the court in *Plainview Motels* reasoned that the Section 33.012(a) ruling in *Shoemake* leads to a similar conclusion with regard to Section 33.013(a).

As to the second argument, even if it is correct, it does not change the outcome. If it was indeed within the jury's purview to apportion responsibility between the University and "John Ruff and/or Catherine Loth," any reduction in the University's liability for A.R.'s recovery as a result was barred by parental immunity as a matter of law.

Accordingly, we sustain Ruff's and Loth's first issue. Judgment should not have been entered taking into account the apportionment findings because the apportionment question was immaterial. We therefore render judgment in A.R.'s favor in the full amount of the jury's $5,900 damage award. *See Ford Motor*, 242

---

[4] This suit does not involve an apportionment question that includes blanks for additional parties beyond the parent(s) and a single liable defendant. A question seeking apportionment of responsibility among multiple defendants may serve other purposes that are not present in this case.

S.W.3d at 44–45; *Torrington*, 46 S.W.3d at 839–40; *Vecellio Ins. Agency*, 127 S.W.3d at 140–41.

Our disposition means that we need not address Ruff's and Loth's second appellate issue. *See* TEX. R. APP. P. 47.1.

## Costs

In their third issue, Ruff and Loth contend that the trial court abused its discretion in not adjudging all costs in their favor as the successful parties in the suit.

The successful party to a suit should ordinarily recover his or her costs, but a trial court may adjudge costs otherwise, so long as the court states good cause for the ruling on the record. *See* TEX. R. CIV. P. 131, 141. Good cause is determined on a case-by-case basis. *See Furr's Supermkts., Inc. v. Bethune*, 53 S.W.3d 375, 376–77 (Tex. 2001). We review the trial court's costs ruling for an abuse of discretion. *Henry v. Masson*, 453 S.W.3d 43, 50 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

The trial court must evaluate how costs should be adjudged in light of the result of this appeal and its effect on any finding of good cause. *See Landing Cmty. Improvement Ass'n, Inc. v. Young*, No. 01-15-00816-CV, 2018 WL 2305540, at *23 (Tex. App.—Houston [1st Dist.] May 22, 2018, pet. filed) (mem. op.); *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n, Inc.*, 154 S.W.3d 878, 895 (Tex.

App.—Dallas 2005, pet. denied). Accordingly, we sustain Ruff's and Loth's third issue.[5]

## Conclusion

We reverse the judgment of the trial court insofar as it reduced the jury's $5,900 damages award to A.R., render judgment for the full amount of that award, and remand for further proceedings consistent with this opinion.


Russell Lloyd
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Hightower, J., concurring.

---

[5] The concurrence correctly notes that, with the 2003 amendments to Chapter 33, it seems that parents can be named as responsible third parties in a suit involving a minor child. Both of the cases referred to by the concurrence address the propriety of naming parents as third parties in the face of a claim of parental immunity. Neither of them involve a case where such a designation has been submitted to a jury and where an apportionment has occurred. Neither this case, nor either of those cases, address the effect on a child's recovery of an apportionment of damages to a parent as responsible third party when parental immunity is claimed. That is a question for another day.